Ford
v.
Walsworth.

## J. D. &. E. W. Ford vs. Walsworth

On a question as to the validity of a sale of real estate under a surrogate's order, there may be a resort to secondary evidence to show the presentment of an account of the personal estate of the deceased and of an estimate of his debts previous to the making of an order to show cause, if the documents cannot on due search be found in the proper office.

Where an action of ejectment is brought against a husband for the recovery of real estate belonging to his wife, a release, executed by the husband to a witness objected to as incompetent on the ground of his liability to the wife under a covenant for quiet enjoyment, is good and valid, and removes the objection to the competency of the witness.

This was an action of *ejectment*, tried at the Cortland circuit in October, 1836, before the Hon. Robert Monell, one of the circuit judges.

The plaintiffs claimed *two-fifths* of 30 acres of land, as two of the heirs at law of Revilo Ford, who died *intestate*, seized of the premises, on the 27th July, 1820, and duly established their claim. The defendant claimed title to the premises under a *surrogate's sale*, made by virtue of an order of the surrogate of the county of Cortland, of the date of 7th March, 1821 ; by virtue of which order the premises were sold, and on the 7th May, 1821, conveyed to Henry L. Beach, the purchaser. On the 12th January, 1832, Beach conveyed the premises by deed, containing *a covenant for quiet enjoyment*, to Philemon C. Rowley, who, in July following, conveyed the same premises to Percy Walsworth, the *wife* of the defendant. The counsel for the plaintiffs objected to the validity of the surrogate's sale on the ground that an account of the personal property of the intestate, and an *estimate of his debts*, were *not* presented to the surrogate at the time of the making of the order to show cause why a portion of the real estate should not be sold for the payment of debts, and admitted that in all other respects the proceedings were unobjectionable. The defendant thereupon produced the *petition* presented by the administrators of the estate of the intestate to the surrogate, on the 22d January, 1821, stating amongst other things that they *had made*

*a just and true account* of the personal estate and an *estimate*
*of the debts* of the deceased, by which it appeared that the
personal estate was insufficient to pay his debts.  He also
produced the order of sale, reciting the petition, the order
to show cause, and the adjudication of the surrogate *that
the personal estate of the intestate had been exhausted in
the payment of debts ;* and he also read in evidence the *deed*
in pursuance of the sale ordered by the surrogate, setting
forth *verbatim* the order of sale.   The defendant then called
the *present* surrogate of the county of Cortland, who testified
that on diligent search he had not been able to find the
*account* of personal property or the *estimate of the debts* of
the deceased in his office, but that he had found the *petition*
and other papers relating to the sale.   The *former* surrogate
of the county testified that in 1821 he was surrogate of
the county, and recollected granting the order of sale in
question ; that he had no particular recollection of the
presentment to him by the administrators of *an account* of the
personal estate and *an estimate* of the debts of the intestate
when the petition was presented for an order for the sale of
the real estate ; that he knew at that time that it was
necessary, before making the order for sale, that such *account*
and *estimate* should be presented, and he had no doubt that
they were presented to him, but did not recollect the fact
particularly ; that he never granted an order for a sale of
real estate unless such estimate was produced to him ; that
he should have filed the estimate if it had been produced to
him, in his office as surrogate ; but that he had no recollection
of ever having seen it, or of making an estimate himself of
the personal estate and debts and striking a balance.   He
held the office of surrogate until 1823.   To the *competency*
of all which evidence the counsel for the plaintiff objected,
and the judge sustained the objection and rejected the testi-
mony.   The defendant then called Beach, the purchaser at
the surrogate's sale, and offered to prove by him that *an
account* and *estimate* were presented by the administrators to
the surrogate at the time of the application for an order to
show cause.   He was objected to as an incompetent witness
on the ground of *interest:* having conveyed the pre-

NEW-YORK,
May, 1838.

Ford
v.
Walsworth.

mises with a covenant for quiet enjoyment. The defendant then after proving that his wife, since her marriage with him, had become the mother of several children, executed and delivered to the witness a *release* from all claim he had on him on account of the covenants contained in the deed executed by the witness to Rowley, (the grantor of the deed to the defendant's wife.) Notwithstanding such release, the counsel for the plaintiff persisted in his objection to the competency of Beach as a witness. The judge sustained the objection, and instructed the jury to find a verdict for the plaintiff; a verdict was found accordingly. The defendant moves for a new trial.

*A. Taber*, for the defendant.

*M. T. Reynolds*, for the plaintiffs.

*By the Court*, COWEN, J. Independent of the question upon Beach's competency, we think there must be a new trial. It appears to us that the proper disposition of the case would have been to submit the question whether the account and estimate had not been made and presented, to the jury. It certainly was not for the judge to hold, as it appeared he did when the case was here before, 15 Wendell, 449, that the evidence was sufficient to bar the plaintiffs recovery ; but no one can read it without seeing that here is quite too much testimony to be withdrawn from the jury as neither *competent* nor *sufficient*. The proper place had been searched, and the paper not found. There cannot be a doubt, therefore, that it was competent to give secondary evidence of it. *Jackson, ex dem. M'Fail* v. *Crawfords*, 12 Wendell, 533. The recitals in the petition and deed, and the adjudication of the surrogate that the personal estate had been exhausted in the payment of debts, combined with the testimony of the surrogate, certainly present a somewhat imposing array of circumstances. It was for the jury to pronounce upon their sufficiency. The surrogate knew his duty was to require the filing of this important paper, and although he did not remember that such a paper had been filed in this particular proceeding, he said with great confi-

dence generally that he never ordered a sale without such a paper being produced to him. He entertained no doubt, therefore, that it had been produced. It is extremely difficult to reconcile such testimony with any other supposition than that the paper had been presented, and lost or mislaid. The ordinary presumption, too, that a public officer has done his duty, though not sufficient per se to establish this vital jurisdictional fact, ought not to be entirely rejected. 19 Johns. R. 345.

The question on the competency of Beach, as it stood after the release from the defendant was executed, depends on the power which a husband holds over the covenants real of his wife. The covenant in question being for quiet enjoyment, ran with the land and became vested in the wife of the defendant ; Smith's Leading Cases, 30 ; *Withy* v. *Mumford*, 5 Cowen, 137 ; *Garlock* v. *Closs*, id. 143, note ; and he being, by the intermarriage seized of the land jure uxoris, acquired in the same right an interest in the covenant. It is of the nature of this covenant to partake of the estate in the land and pass with it by descent or purchase, so long as it remains unbroken ; in other words, so long as the possession of the covenantee and those claiming under him shall remain undisturbed. But on eviction of either by title paramount, a right of action accrues to the person seized for the time being, to recover the consideration money and interest. Cases before cited, with *Kane* v. *Sanger*, 14 Johns. R. 89. The covenant being violated, then takes the character of any other chose in action. Had this covenant, therefore, been broken before the intermarriage, the husband would have had the power to release it. Being broken afterwards, his power would then be equally clear, for he can release all the wife's choses in action. Suppose the defendant in this suit to have been evicted, he could, by a joint action in the names of himself and wife, recover the consideration of the two-fifths in question. He could, therefore, on such eviction release the covenant. That would be to discharge the witness, in the language of the release in question, " from all claim I have on him on account of the covenants," &c. The release might have been more

comprehensive in terms : "from all claim now existing or hereafter to arise, on account of the covenants," &c. but it was not objected to in point of form.  It must therefore be received as available, if there were a power in the defendant to make it so in any form.   The witness stood in peril of a contingent liability, which, when it should arise, the defendant might control.  In his favor a contingent right existed, on the eve of becoming absolute by the plaintiff's recovery. In its form at the time it was an incorporeal hereditament which would survive to the wife, or descend to her heirs, or follow to her assigns ; and it was not transferrable by the defendant for a period beyond his own life.   But on the plaintiff's recovery it would be changed by operation of law into a chose in action, it would become personal estate, and the defendant's power over it be rendered complete. It appears to me that there is nothing in the nature of such a right, to prevent its being cut off by a release properly framed, as I have said this must be taken to have been, under the form of the objection.   Contingent as well as absolute demands are the subjects of release.   Roper's Law of Husb. and Wife, 227, 237, Am. ed.   It appears to me that, under the operation of this instrument, the witness would stand acquitted of all the consequences which could otherwise have been incurred by him on the event of the cause. A recovery by the defendant, it is true, might leave the witness open to the operation of his covenant, in case of an eviction after the death of the defendant ; but that would strengthen the argument for his competency.   Supposing him to testify under such a view, he would be influenced to terminate his eventual liability by favoring the plaintiffs.

If I have not misconceived the nature of the husband's right in this covenant, there seems to be no difficulty upon the authorities in giving complete effect to the release.  See 1 Roper's Law of Husb. and Wife. Am. ed. 227, 237, and the cases there cited.   The result as given by this writer is, that the husband may release all the wife's choses in action, even those in remainder or expectancy, which may possibly fall in during the marriage.

A new trial is granted, the costs to abide the event.