Pearson, J.
dissent. William Jones had an estate to him, and his heirs, in possession, with an executory devise over to his brothers, if he died without leaving a child living at his death. In 1825, he conveyed, by deed of bargain and sale, to Blount in fee, with general warranty, and in 1849 died without issue. Are his brothers barred by the warranty ? The statute of Ann provides, that all warranties made by a tenant for life, shall be void, and all collateral warranties shall be void, except those made by one having an estate of inheritance in possession. This case comes *409 within the words of the exception, and is not embraced in the enacting clause. So, it is agreed, that, while on the one hand it is not aided, on the other it is not prejudiced thereby; and unless the warranty was a bar at common law, the statute cannot have the effect of making it so. A collateral warranty barred the heir without assets. This was the general rule. It was modified, and its hardship mitigated to some extent, by the doctrine of warranty commencing by disseizin. But this doctrine was very limited in its application; for, if the warrantor had any estate of freehold, there could not be a disseizin, or, if he committed a disseizin, and afterwards conveyed with war* ranty, the warranty did not commence by disseizin, it was. necessary that the disseizin and the warranty should be “ simul et semel.” Coke, Lit. 367 a. The injustice of this rule was seen at a very early period, and to restrain its operation, the statute of Gloucester, 6 Ed. 1, provides, that the warranty of a tenant by the curtesy, shall not bar without assets. It was followed by the statute of H Hen. 7, putting a like restraint upon the warranty of a tenant in dower. And the obvious intent of the more general statute of Ann, was to carry out this policy : hence, a construction, by which the operation of the rule, instead of being restrained, is extended to a case which was not before included, would manifestly be doing violence to the. plain meaning of that statute. For instance, if one commit a disseizin, he has an estate of inheritance in possession, and should he afterwards make a feoffment with warranty, the case would be within the words of the exception, notwithstanding the disseizin was committed with an intent to make the warranty. Such a warranty was nota bar at common law. Does the statute make it one ? So, if a husband makes a feoffment in fee to the brother of his wife, and the brother makes feoffment with warranty, and dies without issue, whereby the warranty falls on the wife, *410 as his heir, and^then’ the husband dies, the wife was not •barred -of dower at common law. Coke Lit. 389 a. Vernon’s case, 4 Rep. Shall she be barred by force of the exception, because the brother had an estate of inheritance in possession? ‘‘ Qui hceret in litera, hfcret in cortice'’’ Again, one makes feoffment in fee to his brother upon condition': the condition is broken: at common law the feoffor was not barred by the warranty, which fell upon him as the heir of the warrantor. Coke, 10 Rep., Seymour’s case. Do the words of the exception create a bar ? It is not necessary to multiply instances, because, in the opinion delivered by his Honor, the Chief Justice, the conclusion, to which he arrives, is put on the ground, that, in the case under consideration, the warranty was a bar at common law. He seeks no aid trom the statute, and regrets that the Legislature have not seen fit to alter an artificial and hard rule. So, the only question is, was the warranty a bar at common law ? This suggestion is proper at the outset. The rule, if it existed, in reference to a fee limited upon a fee by conditional limitation and executory devise, is admitted to be an artificial and hard one; of course, its existence ought to be clearly established. And, if it be suggested that the words of the exception are declaratory, and tend, in some measui'e, to prove the existence of the rule, the reply is, the words are satisfied, by applying them to the case of tenant in tail in possession, with remainder or reversion, in which cases, there can be no question that the warranty of the tenant in tail, did, at common law, bar without assets the remainder-man or reversioner, if he hap-' pened to be the heir. Such remainders and reversions were esteemed of but little value, and were never favored, because estates were thereby tied up for an indefinite period. Hence, from considerations of policy, they were allowed to be barred by common recoveries, by fines and collateral warranty, without assets, and the object of the *411 exception was to prevent an alteration of the rule of law, in regard to them. So non constat, that the rule existed in reference to conditional limitations and executory devises; and the inference, if any can be made, is, that the rule did not apply to them, because it is difficult to conceive of a reason, why the Legislature should wish to prevent an alteration of the rule of law in regard to them. Unlike remainders and reversions after an estate tail, they could not be barred by recovery or fine, and no consideration of policy can be suggested for allowing them to be barred by collateral warranty. There was no danger of a perpetuity, because, if they take effect at all, it must happen in a limited time : otherwise, as to remainders and reversions after an estate tail. Hence, the latter were not allowed the protection of the statute de donis', against the effect of a warranty, Coke, Lit. 374 : and the object of the exception, in the statute of Ann, was to leave them as at common law, and this, according to Blackstone, 2 Com. 303, was its sole purpose. A right to enter for a condition broken, cannot be barred by a collateral warranty. This exception to the general rule above alluded to, like that of a warranty, commencing by disseizin, is settled by the authorities: Coke, Lit. 389 a. “ No warranty doth extend unto mere and naked titles, as by force of condition with clause of re-entry, because, that, for these, no action doth lye : and if no action can be brought, there can be neither voucher, writ of warrantia cartee, nor rebutter, and they continue in such plight and essence as they were, by their original creation, and by no act can be displaced or diverted out of their original essence, and therefore cannot be bound by any warranty.” This is one of the resolutions in Seymour’s case, 10 Rep. 97 a. At page 379, Coke Lit., almost our very case is put. “ A man hath issue, two sons, and maketh a gift in tail to the eldest, tire remainder in fee to the puisne, upon condition, that the eldest shall not *412 make any discontinuance, with warranty to bar him'in the remainder: and if he doth, that the puisne son and his heirs shall re-enter. The eldest makes a feoffment in fee, with warranty, the father dieth, the eldest son dieth without issue, the puisne may enter.” It will be remarked, that, in the case put by Coke, the land was passed by a conveyance at common law, by which the benefit of a condition could not be given to a third person, but inured exclusively to the feoffor or his heirs : for this reason, the puisne was not entitled to the benefit of the condition by the direct force of the conveyance (as was the intention of the feoffor); but the law vested the condition in the father, from him, it descended to the eldest son, and at his death, descended to the puisne, who was allowed to take the benefit of it, and to enter, notwithstanding the warranty which had fallen on him as heir to his brother : and, notwithstanding the com-dition had been suspended, while it was in the eldest son. And the case is made to turn on the distinction, between a condition, which is suspended, and a condition which is ea> tinct, which would have been the case, if the feoffment had been made after, ihe'oleath of the father; for then the eldest son would have had the condition, as heir of the father, and would have been the only person who could enter for its breach. If the eldest son had died before the father, the condition would not even have been suspended, and a.fortiori the puisne could enter. In other words, if a conditon, although it has been suspended, be stronger than a warranty, of ’course, it is stronger when it has never been suspended. And we may assume, as settled by authority, that a warranty cannot bar a title of entry for a condition, unless such condition has become extinct.
■ In the present case,' the condition, so far from having become extinct, never was even suspended, but always remained in full force. It is the case of a devise, and by a conveyance -under the doctrine of'uses, and bv a devise, *413 the benefit of a condition may be given to third persons : wherein it differs from a conveyance at common law. This is familiar doctrine.
The brothers of William Jones, then, under the devise, took the benfiet of the condition by which his estate was de ¡ feated. He died first. What is then to extinguish the condition, to the benefit of which they are entitled ? Nothing can be suggested but Ms warranty, and that, we have seen, does not bar a condition. The only way by which, in our case, it could have become extinct, was by the death of the brothers of William Jones, without issue, leaving him their heir. In which event, as he was entitled under the devise to a fee, subject to the condition, and by descent would also have become entitled to the condition, so as to have both the estate and the condition to which it was subject, the condition would have become extinct. But such is not our case, and herein it differs from Flinn v. Williams, 1 Ired. 509 — for there the fee was given to Robert Hanrahan subject to a condition in favor of his brother William, who died first without issue, leaving Robert his heir, whereby the latter became entitled to the condition and so had both the estate and the condition to which it was subject.
The question may be considered in another point of view, by supposing an executory devise or a conditional limitation to confer something more than the right to take advantage of a condition, and to pass a contingent future estate» in the nature of a contingent remainder. It may be remarked that the word remainder, although it has a strict technical meaning, is sometimes used as a genuine term to denote any limitation of an estate to be enjoyed in future. Blackstone so uses it. Where he divides estates in reference to the time of enjoyment, into such as are in possession, reversion or remainder. Coke so uses it. As accurate a writer as Fearne so uses it: and it is sometimes so *414 used in the cases, when it is not necessary to take the distinction. Treating executory devises and conditional limitations as future contingent estates, the authorities are express, that they cannot be barred by a warranty, when limited after a fee : for the reason, that such second estates in fee do not depend upon the first fee, but are entirely independent and unconnected, and cannot be displaced or diverted by any disposition which the taker of the first fee may make of it. In Seymour s case, 10 Rep. 97, and Coke Lit. Sec. 740, where many authorities are cited, it is laid down as a maxim of law. “ That no warranty shall extend to bar any estate of free-hold or inheritance, which is in possession, remainder, or reversion, and not displaced and put to a right, before or at the time of the warranty made.” And it is held that a feoffment in fee made by one who has a determinable fee does not displace or divest the estate limited over: “ for the feoffment is not tortious and passes only the determinable fee. But when a tenant for life or tenant in tail makes a feoffment in fee, the feoffment is tor-tious : for they cannot give a fee, and the remainder and reversion is thereby displaced, and the one causes a forfeiture and the other makes a discontinuance. But when he who hath a fee, although it be determinable, maketh a feoffment in fee, he who hath a fee simple giveth a fee simple and thereby he doth no wrong to his heirs, and by consequence no wrong to him in remainder,” and it is neither a forfeiture or a discontinuance. In our case William Jones had a fee, determinable upon his death without a child, with an executory devise over in that event to his brothers, and haying a fee, a feoffment in fee by him would not have been tortious, and by consequence his warranty does not bar his brothers, whose estate was not divested or displaced. In the more modern authorities, I have been able to find no where an intimation, that a fee limited upon a fee by way of conditional limitation or executory devise (if we *415 except the case of Flinn v. Williams,) can be barfed or destroyed by a warranty, descending from the taker of the first fee upon the puisne, to whom the second is limbed. On the contrary, it is laid down, in general terms, that such limitations cannot be defeated by a common recovery, or a fine, or in any other way, and hence the necessity of fixing a limit as to time. Blackstone lays it down, that a remainder or reversion, after an estate tail may be barred by a collateral warranty, if the remainderman or reversioner be the heir of the tenant in tail, but he nowhere intimates that such a consequence would follow the warranty of the taker of the first fee, in the case of a conditional limitation or executory devise. Hargrave in his argument in Wicker v. Mitford, (see his Law Trats 518) says, “ when exec-utory devises were first permitted, it was seen that entails in that form could not be barred by fines or recoveries.” “Entails by executory devises being thus except from any legal mode of barring them, it became necessary to prescribe limits &c.” Note to Fearne p. 444 ch. 3. Hargrave also says in his second argument in the Thellusson case, “executory devise was not regularly admitted until almost two centuries ago. The rules for circumscribing it are consequently not of earlier date and there are not statutes for the purpose.” “It was soon settled by the Courts of law, that executory devises could not be barred by common recoveries ; that as early as Pells v. Brown 17 James 1.” “But executory devises thus unbarrable by recovery or otherwise, if some limit had not been devised, would have been a shelter for perpetuity.” Note to Fearne p. 429 ch. 2, title executory devise. Certainly, this accurate writer and learned conveyancer would not have used such sweeping words of exclusion, if a collateral warranty was a bar, and an unreasonable doctrine of the old law had been applicable to what he treats as the modern doctrine of executory devises and conditional limitations. Fearne in his treatise on *416 executory devises, 418, says: “The great and essential difference between the nature of a,contingent remainder and that of an executory devise consists in this, thefirst may be barred or destroyed or prevented from taking effect by several different means, as I have already shown: whereas it is a rule, that an executory devise cannot be prevented or destroyed by any alteration whatever, in the estate out of which, or after which it is limited,” and cites Pells v. Brown, Cro. Jac. 560, to show that they cannot be barred by a recovery, and many other cases, in p.424. “ Though in general an executory devise cannot be barred by the first taker; yet, when it is limited alter an estate tail, it may be barred in some cases by recovery.” 428. “This privilege of executory devises, which exempts them from being barred or destroyed, is the foundation of a rule with respect to the contingency, upon which an estate of this sort is permitted to take effect.” Fearne makes an express allusion to the effect of collateral warranty, and no case is referred to, in which the question was stirred. My impression is, after it was settled that such limitations could not be barred by recovery or fine; it was taken for granted, that it could not be done by a warranty, hence no case has occurred. I do not consider the case of Flinn v. Williams, as an authority for the position,that such limitations can be barred by a collateral warranty. In one view, treating the devise as giving to William Hanrahan the benefit of a condition, by which the estate of Robert Hanrahan was subject to be defeated: As William died first, leaving Robert his heir, the condition was transmitted by descent to Robert, and became extinct, as is shown above. In the other view, treatingthe devise as giving to William a contingent fee, limited after a fee to Robeit: as William died first, leaving Robert his heir, the contingent fee was transmitted by descent to Robert, and so he had both the first and the second fee, and the estate vested in him out and out. Of *417 course, he could not set up claim to the estate against his own bargain: upon his death, his heirs, the lessors oí the plaintiff could not do so, for two good and sufficient reasons : 1st.- They were estopped by his deedfrom claiming the land as his heirs. 2d. The warranty was lineal, and they could not claim the land as derived by descent from him, in opposition to his warranty. This is clear, for, if they had recovered the land, it would have been assets by descent from him; subject in their hands to his covenants. So plain and reasonable a proposition needs no authority ; and the case was correctly decided against them, upon the ground of a lineal warranty. It is true that his Honor, Judge Daniel, goes on to cite a case put m Sheppard’s Touchstone, of a warranty by a tenant in tail, which was held to bar the remainderman, upon whom it descended, as heir of the tenant in tail. There is no question as to the warranty, in that case, being a bar, although it was collateral : but it had no application to the case under consideration ; and the general remark as to collateral warranties, with which he concludes his opinion, and which he predicates on that case, was not warranted by it, and was uncalled for by the case then before the Court.
My conclusion is, that as the fee limited to William Jones, was defeated by his death without leaving a child, his warranty does not bar his brothers from asserting their title to the fee, which in that event was limited over to them. This conclusion is upon the supposition, that William Jones made a feoffment with warranty : but in fact, he made a bargain ■and sale, which is by no means as strong a conveyance, and if the former does not bar, of course the latter cannot. How far a warranty in a bargain and sale differs m its effect from one in a feoffment and to what extent, it is less stringent as ■a bar to the heirs, opens a wide field upon which it is .not necessary to enter.
*418 I have treated the case upon the supposition, that the conveyance had the effect of a “feoffment,” because treating it as a mere “ bargain and sale, the question is not an open one. It is settled by Seymour's case 10, Rep. 97, which decides that a bargain and sale, with general warranty, by a tenant in tail, does not rebut the remainderman upon whom the warranty falls as heir. If the warranty does not rebut one who claims in privity of estate, and whose estate depends on and is supported by the preceding estate, of course it does not rebut one who is not a privy in estate, and who claims a fee independent of and unconnected with the first fee, which is subject to a condition, by which it may be defeated, so as to make room for the second fee. And I have treated the warranty as a “ covenant real," because treating it as a covenant of “quiet enjoyment,” the question is not an open one. It is settled by the case of Jacobs v. Gilliam, 3 Murph. 47, which was brought before the Court a second time, Gilliam v. Jacobs, 4 Hawks, 310, and after full and labored arguments reaffirmed. I may beallowed to cite particularly the learned opinion of Judge Henderson, who, treating the warranty asa covenant real, proves conclusively, that such a warranty in a deed of bargain and sale, by a tenant in tail, does not rebut the remainderman, because that conveyance did not work a discontinuance of course such a conveyance and warranty does not rebut the taker of the second fee. When a fee is limited after a lee, his estate is not discontinued by a feoflment, nay, not even by a recovery, and there is no where an intimation that he is rebutted by warranty. I confess that, after a laborious examination of the “curious and cunning learning " of warranty, I was gratified to be able to arrive at the conclusion, that by the combined efforts of the Statute of Ann and the act of 1784, which converts all estates tail into estates in fee, there is now no case in which a warranty bars theheirfromsetting up a claim which is not derived from the ancestor who made the warranty, *419 and I must regret that my brother Judges are of opionion that there is still one case to which that bad doctrine applies. Some good reason no doubt existed for the rule in early times in the'cases to which it applies, but we are not now able to trace them, so as to relieve it from manifest hardships and injustice. Purchasers are sufficiently protected by the remedy against the personal representatives and the ■heirs of the warrantor in case assets descend — treating the warranty as a personal covenant, annexed to the estate and running with it, as a safeguard. In this way the warranty as a covenant of quiet enjoyment protects the estate which a vendor in possession professes to pass, and not simply the estate which actually does pass by a deed of bargain and sale, Lewis v. Cook at this term, by enabling the bargain or his heirs, or the assignee of the estate in case of eviction to recover damages of the bargainor and to reach the assets personal or real, and although, if collateral, it can in no case be used as a bar, still it is a better safeguard to purchasers, and meets more fully the intention of the .parties and the ends of justice, than if it be treated as a covenant real, subject to the rules applied to it, by the old cases. For instance, by the resolutions in Seymour’s case, if tenant in tail make a bargain and sale in fee with warranty, inasmuch as by that mode of conveyance, only such estate passes as he can rightfully pass, when that estate determines, the warranty is no longer of'any force or effect, and can neither be used to bar the remainderman with or without assets, or to bind the heirs of the bargainor, although assets descend, for it makes no discontinuance, and the remainder is not displaced. So, if a tenant for life makes a bargain and sale, in fee with warranty, only his life estate passes, and at his death, the warranty is of no force, or effect, because the estate in remainder or -reversion was not divested, and there was no forfeiture. Thus warranties in deeds of bargain and sale, according to the old rules, furnished no protection to pur *420 chasers. While the estate of which the bargainer might lawfully pass continued, there was no use for the warranty: after it determined, the warranty was of no torce or effect. After the action of ejectment superseded real actions, as in that action there could be no voucher, the Courts construed a warranty to be a covenant of quiet enjoyment, and gave an action for damages in case of eviction. In this State, Avhere bargain and sale is the only mode of conveyance in use, the Courts have acted on the assumption, that, as the warranty was a covenant of quiet enjoyment, it did not determine with the estate which the bargainor might rightfully pass, but protected the estate which he professed to pass: and have accordingly sustained many actions for damages, after eviction by title paramount, which could only occur after the estate that the bargainor might lawfully pass, had determined: and, in fact, this is the only mode of giving to warranties, in deeds of bargain and sale, any effect whatever. These last remarks are not necessary to the conclusion at which I have arrived; but, in a general point of view, they tend to support it, by showing that the Courts have been obliged, in numberless cases, to depart from the artificial (and to us unreasonable) rules of the old doctrine of warranty, by treating them as inapplicable to the covenants in our deeds of bargain and sale, in order to give effect to such covenants, carry out the intention of the parties. and meet the ends of justice. So, every action in which plaintiffs have recovered upon a warranty, treated as a covenant of quiet enjoyment, is an authority for the position, that the covenant does not cease to be of effect, as ,soon as the estate which the bargainor might lawfully make, had determined.