## WIGGINS v. PENDER.

(Filed May 12, 1903.)

1. COVENANTS—*Warranty—Deeds—Grantee—Grantor.*

   A covenant of warranty in a deed inures to the benefit of the assignee of the grantee, though the word assign is not used in the warranty.

2. COVENANTS—*Warranty—Deeds—Mortgages—Grantee—Grantor.*

   The reconveyance of land by a mortgage by the grantee to grantor does not extinguish the covenant of warranty in the deed, and a purchaser at a sale under the mortgage is protected by the covenant in the original deed.

3. LIMITATIONS OF ACTIONS—*Covenants—Warranty—Deeds.*

   The statute of limitations does not begin to run on a breach of covenant of warranty in a deed for land until after eviction.

4. EVIDENCE—*Covenants—Warranty—Deeds—Eviction—Ouster.*

   A judgment for possession and profits in favor of a prior grantee from the common source of title is a sufficient eviction to entitle a person to sue for breach of a warranty of title in the common grantor's deed, under which plaintiff claimed.

5. ATTORNEY AND CLIENT—*Fees—Covenants—Warranty — Notice—Eviction.*

   Where a grantee in a warranty deed is evicted, and did not give the grantor notice of the suit, he cannot in an action on the breach of warranty recover of the grantor counsel fees necessary for defending the title.

6. COVENANTS — *Warranty — Deeds — Executors and Administrators — Heirs.*

   In an action by the assignee of a grantee in a warranty deed against the administrator of the grantor, the assignee may recover though no real assets descended to the heirs of the grantor.

ACTION by J. H. Wiggins against James Pender, administrator of John Armstrong, and others, heard by Judge *Francis D. Winston,* at October Term, 1902, of the Superior Court of EDGECOMBE County.

This action was brought to recover damages for the breach of a covenant of warranty and was heard in the court below

upon the following statement of facts agreed upon by the parties:

On the 18th day of December, 1876, John Armstrong, the intestate of the defendant Pender, executed to Preston Justice and D. R. H. Justice, a deed for a certain tract of land lying in said State and County for the recited consideration of $850; that the said deed contained the following covenant, to-wit: "And the said John Armstrong and wife, Margaret, covenant that they are seized of said premises in fee and have the right to convey the same in fee simple; that the same are free from all encumbrances, and that they will warrant and defend the said title to the same against the claims of all persons whomsoever." On the same day the said Preston and D. R. H. Justice reconveyed the said premises to the said John Armstrong, by deed of mortgage to secure the purchase price, in fee with all rights, privileges and appurtenances thereto belonging, with usual power of sale in the event of default; that in the said deed of mortgage to the said Armstrong the said Justice warranted the title to the said land in fee simple for themselves, their heirs and assigns to the said Armstrong, his heirs and assigns.

The said land was thereafter sold under said mortgage in a foreclosure proceeding under order of the court, and the same was conveyed in fee simple by the commissioner of the court to the ancestor of the plaintiff, "with all privileges and appurtenances thereto belonging, to him, his heirs and assigns," without covenants of warranty; and thereafter said land was allotted and set apart to the plaintiff in the division of his father's estate.

At April term, 1901, of the Superior Court, A. L. Parrish and wife Maggie, brought their action against the above named plaintiff to recover from him the possession of said land and the rents and profits thereof; that the said Maggie claimed said land by virtue of a deed by John Armstrong and

wife prior in date to his deed to the said Justice's and in said action it was adjudged that the said Maggie Parrish was entitled to recover the possession of the land and the rents and profits thereof, for that the said Armstrong had only a life estate in the land at the date of his deed to the Justice's; that the plaintiff was evicted and ousted from said land, under and by virtue of said judgment, and has since brought this suit and paid to the said Maggie the sum of $250.44 as rents and profits of the land, and paid the further sum of $18 costs of said action; that $100 was a reasonable attorney's fee for defending said action against the plaintiff.

John Armstrong died in July, 1885, and on the 10th day of July, 1885, Margaret Armstrong duly qualified as his administratrix, and the said Margaret died in 1892, and thereafter, to-wit, on May 6, 1901, James Pender duly qualified as administrator *de bonis non* of said John Armstrong. The plaintiff brought this action on May 6, 1901. Maggie Parrish died in the spring of 1902 leaving a will and one child, and on the 27th of October, 1902, A. L. Parrish qualified as executor of the will and as guardian of the child.

It is agreed that the amount of damage which the court shall consider in the plaintiff's recovery, if the court be of the opinion that he is entitled on these facts to recover the same, is $850, the purchase price of the land, and the sum of $218.99, being the rent, profits and costs up to April 15, 1901, when judgment was recovered against the plaintiff as above stated, and he was ousted, and the interest on $1,068.99 from said date, and the further sum of $50 paid as rent since said judgment, with interest thereon from December 5, 1901, and the further sum of $100 reasonable attorneys' fees paid by the plaintiff in defending the title to the land in said suit.

Judgment was rendered for the plaintiff against the defendant James Pender, as administrator alone, for the sum

of $1,166.99 with interest on $1,068.99 from April 15, 1901, and costs, from which judgment the defendant appealed.

The following are the contentions of the defendant as appears from the case agreed:

1. That the plaintiff was not the assignee of the covenants contained in the deed from John Armstrong to Preston and D. R. H. Justice, and can not maintain this action for the breach of same.

2. That the covenants contained in said deed were extinguished by the reconveyance of said land to John Armstrong by the said Preston and D. R. H. Justice, and no right of action accrued thereon to the plaintiff.

3. That any cause of action arising upon the covenants in said deed is barred by the statute of limitations pleaded in the answer.

4. That it does not appear from the "agreed statement of facts," that A. L. Parrish and wife recovered said land of the plaintiffs by reason of a paramount title.

5. That neither the costs nor attorney's fees incurred by the plaintiff in the suit of A. L. Parrish and wife should be icluded in the damages for that no notice was given the defendant to defend said action.

6. That on the facts agreed the plaintiff is not entitled to recover.

The plaintiff also contended in his brief that it does not appear from the agreed facts that any real assets descended to the heirs of Armstrong.

From a judgment for the plaintiff, the defendants appealed.

*John L. Bridgers* and *G. M. T. Fountain,* for the plaintiff.
*Gilliam & Gilliam,* for the defendants.

WALKER, J., after stating the case. The argument in this case was confined to the first contention of the defendant,

namely, that the plaintiff is not the assignee of the covenant contained in the deed from Armstrong to the Justices, as the covenant does not contain the word "assigns" and he can not therefore maintain this action for a breach of the same.    This important question was discussed with much learning and ability, but the other exceptions were not argued by counsel, though they were not abandoned, and it is therefore our duty to consider and decide them in connection with the exception just mentioned.

It is a mistake to suppose that the modern covenant for title is to be construed by the same rigid rule as the ancient warranty.    The latter never existed in this State, and in England by Statute of 3 and 4 William IV, the effect of warranty in tolling a right of entry was taken away, and the writs of *warrantia chartae*—when the warrantee was impleaded in an assize, and a voucher or vouchee to warranty in a real action, by the help of which the party wishing to obtain the protection of the warranty might have defended himself or received lands of equal value in place of those he had lost—were abolished, so that the warranty of real estate, which had long been disused, has no practical operation, and indeed we are told by Blackstone that the covenant in modern practice entirely superseded it.    2 Sharswood's Blackstone, 303 and notes.

The defendant's counsel relied on the case of *Smith v. Ingram,* 130 N. C., 100, but it will be seen by reference to Coke that in the passage quoted in that case, *viz,* "if a man doth warrant land to another without this word 'heirs', his heirs shall not vouch; and regularly if he warrant land to a man and his heirs without naming *assigns,* his assignee shall not vouch," he referred to the ancient warranty, for in the very next passage he says, "but note, there is a diversity between a warranty that is a covenant real, which bindeth the party to yield land or tenements in recompense, and the covenant an-

nexed to the land which is to yield but damages, for that a covenant is in many cases extended further than the warranty." Coke, 384B.    He further says that even though the assignee is a stranger to the covenant, that is, not a privy in contract, he can nevertheless have an action on the covenant for a breach, because the covenant runs with the land.    "In this case, the assigns shall have an action of covenant, *albeit* they were not named, for that the remedy by covenant doth run with the land, to give damages to the party grieved, and is in a manner appurtenant to the land.    See in Spencer's case, before remembered, divers other diversities between warranties and covenants which yield but damages."    Coke, 385A.  · And so it was resolved in Spencer's case that if a man makes a feoffment by words sufficient to imply a warranty, the assign of the feofee shall not vouch, but if a man makē a lease for years by words which imply a covenant, if the assignee of the lessee be evicted, he shall have a writ of covenant; for the lessee and his assignee hath the yearly profits of the land which shall grow by his labor and industry, for an annual rent, and, therefore, it is reasonable when he hath applied his labor, and employed his cost upon the land and be evicted (whereby he loses all), that he shall take such benefit of the demise and grant as the first lessee might, and the lessor hath no other prejudice than what his especial contract with the first lessee has bound him to.    The principle does not depend upon tenure, but upon privity of estate.    The question involved is whether the parties have sufficient mutual relation to the land which the covenant concerns, or, as it is commonly expressed in the cases, whether there is a privity of estate, which is considered necessary when there is no privity of contract.    It will be seen that the necessary relation is something different from the ancient privity of estate, and that in many cases the expression is used in a modern sense.  .  .  The original and ancient warranty was a real covenant the remedy

on which was by voucher or writ of *warrantia chartae,* and
which bound the covenantor to replace the lands in case of
the eviction of the grantee, by others of equal value.   The
modern covenants of title, which are often spoken of as per-
sonal covenants because the action on them is a personal ac-
tion, have taken the place of this.   All of these are for the
benefit of the land, and as loss suffered by breach of any
usually, if not always, falls on the owner of the land, there
would seem much practical advantage if the owner of the
land, who suffers loss by a breach of any of them, could have
his action against the covenantor.   .   .   .   But, however
it may be with covenants of seizin and against incum-
brances (which are necessarily broken, if at·all, when made)
a covenant of warranty, that is, the covenant to warrant and
defend is always regarded as a prospective covenant, the
benefit of which will run with the land to any successive
grantee, and of which there will be no breach until eviction.
.   .   .   .   This covenant of warranty binds the original
grantor and his personal representatives to the owner of the
land and any owner during whose possession a breach occurs
can sue any or all previous covenantors, even though the deed
under which he himself claims has no covenant of warranty.
.   .   .   .   In order that an assign shall be so far identified
in law with the original covenantee, he must have the same
estate, that is, the same status or inheritance, and thus the
same *persona quoad* the contract.   The privity of estate
which is thus required is privity of estate with the original
covenantee, not with the original covenantor; and this is the
only privity of which there is anything said in the ancient
books.   In this case, privity of estate is considered as some-
thing entirely different from tenure.   Clearly the presence of
tenure is not necessary to enable covenants either as to their
bnefits or their burdens, to run with the land.   Spencer's
Case, 1 Smith, L. C. (9th Ed.), 174 and notes.

It is said by Mr. Rawle in his excellent work on Covenants that "In the earliest days of the law of which we have accurate knowledge, warranty, which like homage was a natural incident of tenure, passed with the transfer of the estate and inured to the benefit of the owner for the time being.   When, later, deeds were introduced and the warranty was either express or was implied from the word of grant, *dedi,* neither the heir nor the assign of the grantee could take advantage of the warranty unless expressly named.   But while this was so as to warranty, it was not so as to certain covenants—and chiefly among those were the covenants for title—the benefits of which passed with the land to the heir or the assign though not expressly named.   Just why or how this was so is nowhere stated in the old books with such precision as would preclude argument.   In more modern times, amidst much differences of opinion, the doctrine has been variously supposed to depend upon privity of tenure, or privity of estate, upon the nature of the estate, upon the nature of the covenant and upon the relation of the covenant to the estate; and the difficulty of the questions themselves is not less great than the practical importance of their results.   But whatever may have been the grounds on which the doctrine was originally based, it has been from the earliest times consistently held both with regard to the ancient warranty and the modern covenants for title that they run with the land to its owner for the time being, that is to say, the owner of the land is considered entitled to the benefit of all the warranties and covenants which the prior owners in the chain of title may have given."   Rawle on Covenants, 5th Ed., p. 292, Sects. 203, 204.   He further says, quoting from Coke the passage above mentioned : "As respects the rights of the *assignee* a distinction always existed between warranty and the covenants for title.   Thus the warranty implied by the word *dedi* could not be taken advantage of by the assignee of him who had re-

ceived it, but, 'if a man make a lease for years by the word *concessi,* or *demisi* (which implies a covenant), if the assignee of the lessee be evicted, he shall have a writ of covenant.' So, with respect to the warranty and the covenant when expressed in words. 'Regularly,' says Coke, 'if a man warrant land to another and his heirs without naming assigns, his assignee shall not vouch,' but with respect to a covenant, the rule is different, and the asignee could take advantage of it though not named." Rawle, *supra,* Sec. 318.

We have the authority of Chancellor Kent for saying that the remedy by the ancient warranty never had any practical existence in this country, and the personal covenants have superseded the old warranty, the remedy upon them being by action of covenant against the grantor or his representatives to recover compensation in damages for the land lost by the eviction for failure of title. Upon eviction of the freeholder, no action of covenant lay at common law upon the warranty. The party had only a writ of *warrantia chartae* upon his warranty to recover a recompense in value to the extent of the value of his freehold. The covenant of warranty and the covenant of quiet enjoyment are not strictly personal like the covenant of seizin, which is broken when the deed is delivered if the title is defective, but they are prospective in their operation and an ouster or eviction is necessary to constitute a breach. These covenants are, therefore, in the nature of real covenants and run with the land conveyed, and descend to the heirs and vest in assignees or purchasers. 4 Kent (13 Ed.), p. 471 (538) *et seq.*

It is said in Minor's Institutes: "Covenants which run with the land are those which affect the nature, quality or value of the thing granted, where there is a privity of estate between the contracting parties, as a covenant to be answerable for the title. Covenants of this description pass with the land and are binding on, and in favor of, the assignee, although

assigns be not expressly named.   The most important by far
of covenants which run with the land are those which relate
*to the title."*   2 Minor Inst., p. 718.   "Covenants for title
are termed real covenants and pass to the assignees of the
land by the common law, who may maintain actions on them
against the vendor and his real and personal representatives,
and as to covenants relating to the land, it seems that an
assignee may maintain an action on the covenants, although
the covenants were entered into with the original grantee and
his heirs only."   2 Sudgen on Vendors (9 Ed.), p. 89.   "A
covenant which has for its object something annexed to or in-
herent in or connected with real property, such as a covenant
for quiet enjoyment, for repairs, for payment of rent, runs
with the thing demised, and the assignee, though not named
therein, is bound thereby and entitled to the advantages of it."
1 Leigh Nisi Prius, p. 620; *Sacheverelle v. Froggath,* 3 Saun-
ders Rep., 371; *Bally v. Wells,* Wilson, 25; *Tatem v. Chap-
lin,* 2 H. Blk., 133; 3 Washburn on R. P., pp. 497-504.
Certain covenants are appurtenant to the estate granted by
the deed in which such covenants are contained and bind the
assignees of the covenantor, and vest in the assignees of the
covenantee in the same manner as if they had personally made
them.   In England, all covenants for title are considered as
appurtenant to the land, and to run with it.   But in this
country, the covenants for title, considered as running with
the land, are those for quiet enjoyment, for further assurance,
and of warranty.   2 Devlin on Deeds, Sec. 940; *Myggatt v.
Coe,* 142 N. Y., 86.   In the case of *Bradford v. Long,* 7
Bidd., 225, the court says: "In this country, the covenant of
warranty is considered as only binding the party to give dam-
ages as a compensation for the loss of the land warranted;
and such a covenant is in this respect more extensive than the
ancient warranty, for the assign, though not named in the
covenant, may have a remedy for breach of it," citing Coke,

Sec. 386B and 385A, *supra.* "The covenant of general warranty is one that runs with the estate in reference to which it is made, and may be availed of by any one to whom the same may come by conveyance sufficient to transfer the title to the land." *Chandler v. Brown,* 59 N. H., 370. "It is of the nature of this covenant to partake of the estate in the land and to pass with it by descent or purchase, so long as it remains unbroken." *Ford v. Waldsworth,* 19 Wend., 337. "It is a covenant incident to the estate, made for its security and protection, and beneficial to the person to whom the estate should come, but to no other." *White v. Whitney,* 3 Metc., 86.

The above authorities establish the proposition that the covenant of warranty is a covenant real, in the sense that it is annexed or incident to the estate conveyed by the deed and runs with it inseparably for the benefit of all who may succeed to the title by purchase, and who sustain the relation toward the original covenantee of privies in estate, whether those who succeed to the title as assignees, are expressly named as such in the covenant, or not. *Lewis v. Cook,* 35 N. C., 193; *Markland v. Crump,* 18 N. C., 94; 27 Am. Dec., 230.

In this State the warranty has been treated as a personal covenant annexed to the estate and running with it as a safeguard and protection to the grantee and his heirs or the assignees or purchasers of the estate in question, and is not regarded strictly as a covenant real within the meaning of the old law and the operation of the principles concerning real actions. A more liberal construction is given to it with the view of "meeting more fully the intention of the parties and the ends of justice." *Spruill v. Leary,* 35 N. C., 419; *Southerland v. Stout,* 68 N. C., 449; *Markland v. Crump,* 18 N. C., 94; *Blount v. Harvey,* 51 N. C., 186.

But in this case we think the covenant by a clear and necessary implication, must enure to the benefit of the plain-

tiff as assignee, although the word "assigns" was not used in the warranty. The words "heirs and assigns," are used in the *habendum* and the grantees are also named in the *habendum,* but not in the warranty. Can it be supposed that the grantor did not intend a covenant for the benefit of the grantee? Yet this must be true unless it is held that the covenant should be construed as made for the benefit of him who is named in the *habendum.* In *Herrin v. McEntyre,* 8 N. C., 410, this court held that, when the *habendum* in a deed is to a man and his heirs forever, he may recover for an eviction on a general warranty though his name is not mentioned in the warranty, and though it is not stated in the clause of warranty to whose benefit it shall enure, for, "it is the nature of a warranty to run with the estate, and," as Coke says, "though in the clause of the warranty it be not mentioned to whom, etc., yet shall it be intended to the *feoffee."* Coke, Sec. 384. If it enure to the *feoffee,* when not named in the warranty, why not as well and with equal reason to the heirs and assigns to whom the estate is limited in the *habendum,* when they are not named in the warranty?

We conclude, therefore, that the plaintiff can maintain this action for the breach of the covenant, unless barred of a recovery for some other reason set up in defense. The reconveyance of the land by mortgage from the Justices to Armstrong did not have the effect of extinguishing the covenant, but the mortgagee was entitled to the benefit of the covenant in the mortgage as an indemnity against the acts of the Justices, in so far as necessary to protect the estate he held as security for the debt from any defect of title which might arise from said acts. There was no estoppel or rebutter, and, when the land was sold, the benefit of the original covenant passed to the purchaser. This subject is fully discussed in Rawle on Covenants, Sects. 266, 217 and 218, and

the cases are there collated.    See also 3d Washburn on Real
Property; *Resser v. Carney,* 52 Minn., 397; *Lewis v. Cook,
supra; Markland v. Crump, supra.*    "Where land is conveyed
by deed of warranty and the same premises, at the same time,
are reconveyed in mortgage with like covenants, the covenants
in the mortgage deed will not operate to preclude the mainte-
nance of an action on the covenants of the absolute deed."
*Brown v. Staples,* 28 Maine, 497.    Nor will they operate by
way of rebutter to prevent circuity of action."    *Haynes v.
Stevens,* 11 N. H., 28; *Sumner v. Barnard,* 12 Metcalf, 459;
*Hubbard v. Norton,* 10 Conn., 422.

The plaintiff's cause of action is not barred by the Statute
of Limitations.    It did not accrue until there was an eviction,
which took place in 1901, and the statute does not commence
to run until the right of action has accrued.

We are also of the opinion that it sufficiently appears in
the case that there was an eviction by one holding a para-
mount title.    It is admitted that Mrs. Parrish brought her
action against the plaintiff and recovered judgment and that,
by process issuing upon said judgment, the plaintiff was
evicted.    Both parties claimed under John Armstrong, and
Mrs. Parrish held a deed from Armstrong prior in date to the
deed from him to the Justices, under which the plaintiff in
this action claims.    As the parties were estopped to deny
the title of John Armstrong, the older deed of Mrs. Parrish
was sufficient to show that she held the better title, as be-
tween her and the plaintiff.

The next question in the case relates to the damages and
especially to the right of the plaintiff to have counsel fees,
which he paid out in defending the suit of *Parrish v. Wig-
gins,* included in the recovery.    The covenant of warranty is
a contract of indemnity, and while the usual rule is that the
plaintiff recovers only the amount of the purchase money and
interest, it is held by many courts outside of this State, that

he can recover also any amount he is compelled to pay, as costs and expenses, in defense of the title, so that he may be fully indemnified against any loss by reason of the breach of the covenant, provided always the cost and expenses so paid by him are reasonable. It seems to be conceded in some of the cases that he is entitled to recover as a part of his compensation or damages the cost of defending the suit in which the judgment against him for the possession of the premises was given, and also that attorney's fees may be included when the warrantor has been notified of the suit and requested or vouched to come in and defend the title, and it is held in the greater number of cases that he is entitled to recover attorney's fees whether the covenantor was notified or not. The reason for this rule, as gathered from the cases, would seem to be based upon the following considerations: If the covenantee defends the suit in good faith and with proper diligence, what he does is for the benefit of the covenantor, and such expenses as are necessarily incurred by him are, therefore, inseparably connected with his claim of indemnity. It would be too much to require the grantee in a deed of warranty to decide at his peril on the validity of a title set up in opposition to that which the grantor undertook to convey. By the covenant, the grantor agrees not only to warrant, but to defend the title, and if the covenantee is compelled to make the defense or suffer a judgment by default, he should recover in an action on the covenant, as it is a contract of indemnity, what he has thus been compelled to pay out. *Smith v. Compton,* 23 E. C. L., 106; *Sumner v. Williams,* 8 Mass., 162; 5 Am. Dec., 83; *Rickert v. Snyder,* 9 Wendell, 416; *Ryerson v. Ehapman,* 66 Me., 557; *Meservy v. Snell,* 94 Iowa, 222; 58 Am. St. Rep., 391; *Harding v. Larkin,* 41 Ill., 420. Whether these considerations should induce us to allow counsel fees as a part of the damages is a question we need not decide until it is actually presented in a case before us.

While, as we have already said, it seems to be held in a majority of the cases that the covenantee may increase his damages by the amount of reasonable costs and counsel fees paid by him in defending the suit for the recovery of the land without giving notice to the covenantor, we prefer to adopt the rule which appears to us to be more in consonance with reason and right, and to recognize and enforce the just principle that a man should be heard before he is required to pay, or to have his day in court or at least a chance to have it. We think that the covenantor was entitled to notice to come in and defend the suit and that he should not be adjudged to pay any counsel fees without having had an opportunity to comply with his contract and defend the suit himself, or, if he desired to do so, to submit to a judgment and save any additional costs and expenses, if he should discover that his title was so defective as to render useless further resistence to the suit. This view is well expressed in the case of *Chestnut v. Tyson,* 105 Ala., 163. "If notice had been given to the appellants (covenantors) they might have thought proper to defend the suit and employ their own counsel, or they might have come to the conclusion that the title of the plaintiff in the ejectment could not be successfully resisted and they might, therefore, have determined not to incur useless expense in making a defense, and preferred to perform their covenant by paying to the appellees the amount of damages to which they might be entitled. Of course, this rule would not apply to such of the costs of the ejectment suit as would be adjudged against the defendant therein, though no defense was made, as upon default, for instance; and these, we apprehend, might be recovered on the covenant notwithstanding notice to the covenantor had not been given, since it is only the expense of *defending* the suit which he would have upon notice, the election of incurring or not." *Chrisfield v. Storr,* 36 Md., 129-151.

The rule we propose to adopt is the safest and best, as it is easy and convenient for the covenantor to give such notice, and, besides, important advantages might accrue to him from doing so.    There is no hardship in the rule, as there would or might be, if a contrary rule were laid down.

The appellant does not except to the allowance of the costs of the other suit in which plaintiff lost the land, but does except to the award of counsel fees as part of the damages, because no notice of the suit was given.    As it does not appear in the case that any such notice was served on the defendant, this exception is sustained and the judgment of the court below is modified accordingly.

The last objection to the plaintiff's right to recover upon the facts stated can not be sustained.    It is not necessary, in this case, that real assets should have descended to the heirs of Armstrong.    They are not sued in the case for the breach, and, in an action on the covenant, as distinguished from the ancient warranty, the plaintiff is not required to show that the heirs received real assets.    The plaintiff is not trying to avail himself of the warranty by way of rebutter. The ordinary covenants for title are personal covenants, in the sense that they are binding on the personal representative of the covenantor and, though they run with the land, they are not strictly real covenants within the meaning of the ancient feudal law.    *Carter v. Denman*, 23 N. J. L., 260. This is like any other action on a covenant sounding in damages, and the judgment will be satisfied out of the assets of the covenantor, whether personal or real, in like manner as a recovery upon any other obligation.    Under our present procedure, the plaintiff merely recovers judgment for his damages, and he must obtain satisfaction not by execution, but by a proceeding to have the assets of the intestate applied to its payment.    There must be assets, it is true, before the plaintiff's claim can be satisfied, but the fact that no assets

have descended to the heirs will not defeat the plaintiff's right to have a judgment against the administrator. If there are no personal or real assets, the plaintiff will get nothing on his judgment. That is all.

There was error in the judgment of the court below as above indicated, and judgment will be entered in accordance with the principles stated in this opinion.

*Per Curiam.*   Judgment Modified and Affirmed.