The plaintiff brought this action to recover damages for a breach of a covenant of warranty. T. E. Balsley, as executor of Jacob B. Balsley, on 26 February, 1898, in consideration of $3,600, executed a deed to the plaintiffs for a lot in the city of Greensboro, which is described in the complaint. At the same time the defendants, referring to the said deed, covenanted with the plaintiffs, their heirs and assigns, "that the title to the property was vested in the said Jacob B. Balsley, and that the same is free from all encumbrances, and that the said T. E. Balsley as executor is authorized and empowered to sell the same and that they will warrant and defend the title to the same against the lawful claims of all persons whatsoever." The evidence tended to show that, in a suit regularly instituted and tried, Eugenia Watlington and others as plaintiffs recovered of the plaintiffs in this case a part of the land conveyed by the deed of T. E. Balsley, executor, to them, the title to which is protected by the covenant of warranty. The defendants in that suit informed the covenantors of the pendency of the action on their covenant, though they did not request them to defend it, but stated, at the time of giving the notice, that they intended to defend the suit. They employed attorneys, defended the suit, and lost a part of the land by the judgment therein. The taxed costs amounted to $138.65; attorneys' fees, paid by them, to $175, and the damages assessed by the jury to $135. The plaintiffs in this action alleged in their complaint that they had been ousted or evicted by the plaintiffs in the former suit, who held the paramount title. The defendants, in their answer, admitted the sale of the land and the execution of the covenant, and also admitted that the plaintiffs in this action, under the judgment in the suit (63) against them by the Watlingtons, had been dispossessed of the part of the land described in the complaint, but averred that they had not been damaged thereby, and further, that at the time they purchased the land and received the deed therefor the plaintiffs had full notice that the Watlingtons claimed a part of the land, and were advised not to buy the same. In an amendment to the answer they aver that the judgment in the former suit, when construed in connection with the map annexed thereto, does not include any land conveyed by the deed of the executor, and by reason thereof they plead the judgment as an estoppel upon the plaintiffs.
The judge submitted issues to the jury which, with the answers thereto, are as follows:
1. Did the defendants covenant to warrant and defend the title to the land described in the complaint? Answer: Yes.
2. Were the plaintiffs ousted from the land or any part thereof, as alleged in the complaint? Answer: Yes. *Page 49 
3. What damages, if any, are the plaintiffs entitled to recover for costs and attorneys' fees? Answer: $313.65.
4. What damages, if any, are plaintiffs entitled to recover as the value of the land taken from the plaintiffs? Answer: $135.
The defendants duly excepted to the third issue. Judgment was entered for the total amount of damages assessed by the jury, including attorneys' fees and costs, and the defendants appealed.
When this case was first presented to us, we thought it would be necessary to decide whether the record in the original suit was evidence against the defendants in this case, either presumptive, prima facie, or conclusive, that the plaintiffs had been ousted by a paramount title. It is alleged in the complaint that the plaintiffs in the suit of Watlington v. Jones recovered a judgment for a part of the land conveyed by the deed of T. E. Balsley, executor, to Jones and Taylor, upon a title paramount to that which was (64) conveyed by the deed of T. E. Balsley, executor, and this allegation was not denied. It is true that defendants allege in their answer that the land recovered from Jones and Taylor in the action against them is not a part of the land conveyed to them by Balsley, executor; but that allegation only raises an issue as to the true location of the land, and not as to the superiority of the title of the Watlingtons, if it is embraced by the description in the deed. If the Balsley deed did not convey the land recovered in the other suit, the title is not protected by the covenant of warranty, and the question as to the paramountcy of the Watlington title is not involved. The jury have found, in their response to the first issue, that it is so embraced, for they have decided that the land described in the complaint is covered by the covenant of warranty, and the plaintiffs herein have been ousted therefrom. There was, therefore, no controversy as to the title being paramount to that conveyed by the Balsley deed, but the only question was whether the deed conveyed the land and the warranty protected the title. This fact was found against the defendants' contention, both in that suit and in this. We have not discovered in the case any prayer for instructions or any specific exception or assignment of error which relates to the location of the land or to the effect of the judgment in the original suit, as an estoppel upon the plaintiff in this action to now assert that the deed of T. E. Balsley, executor, covers the land described in the complaint, though it is argued in the brief that they are so estopped, and, in aid of that argument, a map is referred to which is not a part of the record. *Page 50 
The plaintiff, J. W. Jones, testified that the land which he lost in the Watlington suit is a part of the land which was conveyed to him and Taylor by Balsley, and the court seems to have submitted the question as to whether the land which was recovered in the Watlington suit was embraced by the Balsley deed and the covenant of warranty, to the jury, upon the evidence, and they have found that it was included in the description of that deed, and, therefore, covered by the warranty. Nor do we see how the plaintiffs in this action are estopped by the record (65) in the original suit to allege that the three acres recovered in that suit were conveyed by the Balsley deed, and are, therefore, within the protection of the warranty. The Watlingtons recovered the land, we must assume, because they had a valid and superior title. It was sufficient for them to show this in order to recover, and it made no difference whether they recovered because their title was paramount to that claimed by the defendants in that suit under the Balsley deed, or because the land in dispute was not embraced by that deed. They might have recovered on either ground. It was not, therefore, essential that the jury should have found, and the court adjudged, that the land was not so embraced, in order to decide with the Watlingtons; and the location of the land, consequently, was not necessarily involved in that case, even if the plaintiffs in this action (defendants in that one) would be estopped, as contended by the defendants, if it had been so involved. The defendants in this action have not denied the allegation that the Watlingtons recovered under a paramount title, but have merely averred that the three acres are not covered by the warranty. We may add that there is really no question in the case as to the superiority of the Watlington title, if the three acres are covered by the Balsley deed.
The first prayer of the defendants, namely, "If the jury believe the evidence, the plaintiffs are not entitled to recover," has frequently been condemned by this Court as not being a proper one, and may be disregarded when the case is tried upon specific issues framed to ascertain the facts.Farrell v. R. R., 102 N.C. 390; Baker v. Brem, 103 N.C. 72; Clark's Code (3 Ed.), sec. 413, p. 535, and notes.
The other assignments of error which it is necessary to consider relate to the allowance of attorney's fees paid and costs taxed and recovered in the other suit as part of the damages.
There seems to be great conflict in the authorities as to the legal effect of a judgment recovered against a covenantee, as evidence against his covenantor, in an action upon the warranty, both as to the title and the damages. Rawle, in his excellent treatise on "Covenants for (66) Title" (5 Ed.), sec. 125 and p. 164, states the rules, which, he says, have been adopted by a majority of the courts, as follows: "In reviewing, then, what has been said on the subject of notice to the *Page 51 
convenantor of the adverse proceedings, the following points appear to be settled by the weight of authority.
"First. The notice must be distinct and unequivocal, and expressly require the party bound by the covenant to appear and defend the adverse suit.
"Secondly. If such notice appear upon the record of that suit or if the covenantor be made a party to it, the court will, in the action on the covenant, be authorized to instruct the jury that the recovery is conclusive upon and binds the defendant in that action.
"Thirdly. If the notice do not thus appear on the record, the question of conclusiveness of the judgment will depend upon the belief of the jury as to the reception of the notice.
"Fourthly. If the record of the adverse suit does not exhibit on its face the title under which the recovery was had, the plaintiff in the action on the covenant must, notwithstanding proper notice has been given, prove that such title did not accrue subsequently to the deed to himself.
"Fifthly. If no notice has been given, the record of such adverse suit is not even prima facie evidence that the title was a paramount one, though it may under some circumstances be evidence of eviction; and
"Sixthly. It is not indispensable to the recovery on the covenant that notice of the adverse suit shall have been in any way given."
This Court, in Martin v. Cowles, 19 N.C. 101, approved in Wilder v.Ireland, 53 N.C. 85, held that a judgment in ejectment against the vendee is no evidence of a defect in the title of the vendor, when the latter is sued upon his covenant by the former, and Chief Justice Pearson says, inWilder v. Ireland, that such is the settled law of this State. See Millerv. Pitts, 152 N.C. 629.
We need not attempt to reconcile the conflicting authorities, for it is enough for us to decide in this case, as we do, that the notice given to the defendants as to the pendency of the Watlington suit (67) was sufficient in law to charge them with all the costs and reasonable attorney's fee in assessing the damages. We have referred to the foregoing rules for the purpose of showing what should be substantially the form of the notice, as it is said that the right to recover costs and counsel fees depends upon the character of the notice given by the covenantee to the covenantor of the suit in ejectment against him. After reviewing the authorities, the following conclusion was reached by Mr. Rawle and stated in his work on Covenants for Title (5 Ed.), sec. 201, p. 290: "A consideration of these rather conflicting cases would seem to suggest, as a rule to be deduced from them, that the plaintiff's right to recover counsel fees as part of his costs should, in general, be limited to cases where he has properly notified the party bound by the covenant *Page 52 
to come in and defend the title, but that the neglect or silence of the latter should inure to the benefit of the plaintiff rather than to his own." Chesnut v. Tyson, 105 Ala. 163; Wiggins v. Pender, 132 N.C. 628;Chrisfield v. Storr, 36 Md. 129; Somers v. Schmidt, 24 Wis. 417 (1 Am.Rep., 191).
The notice given by the plaintiffs to the defendants of the other suit, while there was no express "tender of the defense," as it is called, was quite sufficient to warn the defendant that he was expected to assist in the defense of the suit, nor does it show that the plaintiff intended to exclude the defendants from participation therein. Why notify the defendants at all, if they did not expect them to comply with their covenant and defend the title, which they had expressly promised to do? The notice clearly implied that the plaintiffs in this suit looked to the defendants to protect them in the other suit by defending the same and making good their assertion of title to the land. It is not required that the notice shall be in any particular form or in writing, if it sufficiently, though only substantially, informs the warrantor that his covenantee has been sued and his title has been assailed, and the former has the opportunity to defend his title against attack and to save himself from liability upon his warranty. The true doctrine is stated in Carroll v. Nodine, 41 Or. 412, as follows: "But before an indemnitor (68) can be expected to defend, he must have reasonable notice of the pendency of the suit or action by which he is to be bound, and afforded an opportunity to participate in or interpose such defense as he may desire; and it is only by complying with such conditions that the party to be indemnified can estop the indemnity to controvert the matter anew upon an action against him upon the indemnity contract or obligation. Of course, the suit or action that works the estoppel must have been prosecuted without collusion or fraud, as it affects the indemnitor. While notice of the pendency of the suit or action is always necessary to render the decree or judgment binding upon the indemnitor, the better reason and the weight of authority dispense with any request to take charge of or assume the responsibilities of the defense. Having notice, the indemnitor may, as is his right, interpose and make such defense as to him might seem most expedient and effective; and, if he did nothing in that direction, it must be considered a matter of his own volition, and a request for him, coupled with a warning of consequences, to do that which duty and interest require him to do, would seem superfluous, and the law, which is founded upon reason, does not require a vain thing." If the covenantor fails to appear and defend, the covenantee must, of course, be required to conduct the defense in good faith and with reasonable diligence. The judgment must not have been recovered against him by reason of any neglect or default on his part. *Page 53 
We think the notice given by the plaintiff was equivalent, in law, to a notice to defend, as a request to do so is fairly to be implied. When the plaintiffs stated that they would defend the suit, it was not meant that the defendants should not have full opportunity to do so, if they desired; but the contrary is the reasonable implication. It is more just to say that they intended to inform the defendants that if they did not defend, the plaintiffs would defend for them, and not merely for themselves. This accords with what was said in Wiggins v. Pender, supra, as we hold that the notice is substantially one which "tenders the defense."
The object of notice is to give the covenantor an opportunity to defend his title in his own way and with his own counsel, and (69) to settle the case and pay the damages by yielding to the superior title, if his is found to be wanting, and thereby save unnecessary costs and expenses.
We do not think this decision necessarily conflicts with Martin v.Cowles, supra, and Wilder v. Ireland, supra. Each of them was decided upon the question whether the judgment in the ejectment suit was conclusive as to the title, under the system of pleading, practice, and procedure prevailing at common law, when the ejectment suit was regarded with respect to the covenantor as res inter alios acta, and he could not, for that reason, become a party to it. The great weight of authority in England and this country is to the effect that it is sufficient to conclude him by the judgment that he is made constructively a party by substantial notice to come in and defend his title, and that it is not necessary that he be actually a party to the suit. In Martin v. Cowles, 19 N.C. at p. 102,Judge Gaston, says that the record in the ejectment suit is, as to the covenator, "evidence of the fact of the judgment (rem ipsam), and of the damages and costs recovered" — implying, we think, that the covenantee in the action upon the covenant is only required to show that the title of the plaintiff, who recovered against him, was paramount, and if he does so, he is entitled to recover the damages he paid in the other suit and the costs taxed, and, we add, reasonable counsel fees, as part of his legitimate expenses.
The covenantor agreed by his warranty to defend the suit, and if he failed to do so, there is no reason why, if properly notified of the suit, he should not pay the covenantee what he would have paid himself if he had complied with his promise and defended his title. Where there is a breach of duty, whether that duty be imposed by contract or by the law, the party who commits the breach should be required to repair the loss caused thereby and which naturally flows from the breach in the case of tort (Johnson v.R. R., 140 N.C. 574), and such loss in the case of contract as was within the reasonable contemplation of the parties. (Williams v. Tel. Co.,136 N.C. 82.) If the covenantee is required by *Page 54 
the inaction of his covenantor to defend the ejectment suit, it will be admitted, we think, that it must have been within the reasonable (70) expectation of the parties that counsel would have to be paid by him, as they are ordinarily and generally retained in such cases. It seems to be implied in Gastonia v. Engineering Co., 131 N.C. 363, that counsel fees would have been allowed in that case if the suit against the town had been covered by the indemnity bond. The fees must be reasonable, and because the court instructed the jury that the plaintiffs were entitled to recover the fees they actually paid to counsel, without regard to their reasonableness, there was error, as this was not the proper rule, and for this error there must be a new trial as to the third issue. There was no objection to the amount of the damages assessed under the fourth issue, and there was no question properly raised as to the title, and the jury have found as a fact that the three acres were conveyed by the Balsley deed, and, therefore, covered by the warranty. Nor was there any controversy as to the ouster under the judgment in the Watlington suit. The plaintiff is entitled to recover the costs taxed in that case. The only error was as to counsel fees; but as they are blended with the costs in the third issue, that issue must be tried anew. Rowe v. LumberCo., 133 N.C. 433.
Before taking leave of the case, we should say that the text-writers state that the rule, as declared in Martin v. Cowles, supra, and approved in Wilder v. Ireland, supra, as to the effect of a judgment, in an ejectment suit against the covenantor, as proof of title in an action on the covenant, has been adopted in this State only. In Rawle on Covenants for Title (5 Ed.), p. 153, Note 1, it is said that, "In North Carolina alone (unless the decisions are based upon some local usage, for the common law has in none of our States been more clearly understood or expounded) does a contrary opinion seem to prevail," and that it is contrary to the rule accepted by all other courts and the text-writers.
As counsel fees paid in the ejectment suit were fairly within the contemplation of the parties as a part of the damages which the plaintiffs would sustain by the breach of the covenant, we think they are covered by the prayer of the complaint without any more special reference to them. It was as probable that the plaintiffs would have to pay counsel fees in that case as it was that they would be compelled to pay costs and damages.
There must be a new trial as to the third issue.
Partial new trial.
Cited: Gregg v. Wilmington, 155 N.C. 29; Culver v. Jennings,157 N.C. 565; LeRoy v. Steamboat Co., 165 N.C. 121. *Page 55 
(71)