SUSAN M. GREGG, ADMINISTRATRIX, v. CITY OF WILMINGTON.

(Filed 19 April, 1911.)

1. Cities and Towns—Licensee—Negligence—"Pari Delicto."

When a city has permitted its co-defendant in the action to pile upon a sidewalk bricks taken from a building which was being torn down for the purpose of erecting a new one on the same site, and the co-defendant negligently piles the brick in such manner as to cause the injury resulting in the death of plaintiff's intestate, the city and its co-defendant are not *in pari delicto*, so as to deprive the city of the right to indemnity against the delinquent co-defendant, as the permission to pile the brick implied that the piling should be carefully done.

2. Same—Notice—City's Liability.

The negligence complained of in an action against a city and one who, under contract with the city, is alleged to have negligently piled brick upon a sidewalk in such a manner as to cause the alleged injury, does not render the city responsible in damages, unless it appears that the city permitted the continuance of the negligent act after it was fixed with actual or constructive notice thereof.

3. Same—Dependent Liability.

When, in an action against a city and one whom it had permitted to pile bricks on its sidewalk, the negligence consisted in carelessly piling the bricks on the sidewalk so as to injure and cause the death of plaintiff's intestate, the negligence of the city is directly and necessarily dependent upon the negligence of the licensee, and cannot exist without it.

4. Same—Inconsistent Verdict.

The verdict, in an action against a city and one who was permitted by it to pile bricks on its sidewalk, alleged to have been so negligently done as to cause the injury complained of, which resulted in the death of the plaintiff's intestate, is inconsistent when it finds that the intestate was killed by the negligence of the city and not by that of its licensee, for the injury could not have occurred except for the alleged negligent act of the latter in piling the brick insecurely.

5. Verdict—Issues Set Aside—Judgment—Legal Rights.

When the questions involved in an action are so interwoven that they cannot be separated, and a new trial allowed as to one or more issues, without prejudicing the rights of one or more

parties or preventing a full and just trial of the whole matter, the power which exists in certain cases to set aside a finding upon one of the issues should not be exercised.

6. **Same—Appeal and Error.**

When a city and its licensee are sued for negligence in the same action, and the negligence of the licensee, if any, is primary, the liability of the city necessarily depends upon the existence of negligence in the licensee; and where the jury find that the city was negligent and the licensee was not, it was error for the trial judge to set aside the issue relating to the negligent act of the licensee and render a judgment upon the other issue against the city.

7. **Cities and Towns—Licensee—Secondary Liability—Indemnity.**

In an action against a city and its licensee for injury caused by the negligent act of the latter, of which the city had notice, their liability as between them and the plaintiff would be joint and several, but the city would be entitled to judgment against the licensee to indemnify it from loss in the event of recovery, being only secondarily liable. The doctrine of contribution has no application.

8. **Contracts—Negligence—Primary Liability—Release—Effect.**

The release by the plaintiff from liability of one of two defendants for a tort which was committed by both will also release the other defendant.

9. **Appeal and Error— Verdict Set Aside in Part — Legal Rights — Procedure.**

When upon appeal it appears that the trial judge has erroneously set aside issues as to the negligence and liability of one defendant and rendered judgment against the other, it is not an invasion of the discretion of the judge below for the Supreme Court to order a new trial upon all the issues, and it will be so ordered.

10. **Pleadings—Inconsistent Pleas—Negligence—Primary and Secondary Liability—Indemnification—Judgment.**

In an action against a city for permitting the continuance of a negligent act by its licensee, alleged to have caused the injury complained of, it is not inconsistent, but proper, for the city to deny negligence on the part of both defendants, and then to aver that if, as between the plaintiff and the defendants the latter were both guilty of negligence, the licensee is, as between the defendants, primarily liable, and the judgment should be so framed as to indemnify the city and reimburse it for what it will have to pay on account of the negligence of the licensee.

11. Negligence — Primary and Secondary Liability — Indemnification—Judgment—Instructions—Procedure.

    While the secondary liability of a city for the negligent acts of its licensee and co-defendant must first be established before a judgment of indemnification can be given the city against its co-defendant, if it is alleged that the latter's negligent act primarily caused the injury complained of, the question of primary and secondary liability should be determined by the jury upon proper instructions of the court.

APPEAL from *Cooke, J.,* at the May Term, 1910, of NEW HANOVER.

This action was brought by the plaintiff against the City of Wilmington and James F. Woolvin to recover damages for negligently causing the death of E. M. Gregg, her husband and intestate.

The defendant Woolvin, who was engaged in the demolition of an old building for the purpose of constructing a new one on the same site, obtained permission from the authorities of the city to use the sidewalk in front of the lot temporarily as a place for piling bricks taken from the old building. In order to do the work, it became necessary to close the sidewalk, and the bricks were piled on it and in the street, so that pedestrians were compelled to pass around the pile of bricks in using Princess street, where the work was being done. It is alleged by the plaintiff that the pile of bricks was twelve feet high, six feet wide and twenty-five feet long, and that the bricks were improperly and dangerously stacked, and not being securely propped they were liable to be toppled from their position by the jar of a passing street car, the railway being laid in the street only a few feet from the pile of bricks. The intestate, while walking from his home to his business office along Princess street, that being the direct and usual route for him, was stopped by a friend near the pile of bricks, and while standing there engaged in conversation a street car passed and jarred the bricks so that they fell on the intestate and killed him. The plaintiff charges that her intestate's death was in this way caused by the negligence of Woolvin in piling the brick and leaving them in a dangerous condition not perceptible to persons using the street, by ordinary inspection, and that the city was negligent in per-

mitting the bricks to remain piled in the street after it either knew, or could have known, of the danger to those using the street.

The city of Wilmington answered the complaint by denying all the material allegations as to negligence. It then averred that if the bricks were negligently piled, it was done by Woolvin, who, as between him and the answering defendant, is primarily liable, though it admits that they are both liable to plaintiff if her intestate was killed by the negligent act of Woolvin, and the city was also negligent in respect to that act, as alleged by the plaintiff. It prayed for judgment against Woolvin in the event that it should be held liable to the plaintiff and compelled to pay damages to her for Woolvin's negligent act.

The defendant Woolvin demurred to this answer, but it is not now necessary to pass upon it, as we will do so when we come to consider his appeal.

The court submitted issues to the jury, which, with the answers thereto, are as follows:

1. Was the plaintiff's intestate killed by the negligence of the city of Wilmington? Answer: Yes.

2. Was the plaintiff's intestate killed by the negligence of the defendant James F. Woolvin or his contractor, B. H. Stevens? Answer: No.

3. Was the plaintiff's intestate guilty of contributory negligence? Answer: No.

4. Were the bricks piled by B. H. Stevens, and was said Stevens an independent contractor in respect to that work? Answer: No.

5. What amount of damage is plaintiff entitled to recover? Answer: $7,000.

The court set aside the verdict as to the second and fourth issues, and rendered judgment for the plaintiff upon the remaining issues against the city of Wilmington. Both defendants appealed.

*John D. Bellamy & Son and Rountree & Carr for plaintiff.*
*Herbert McClammy and E. K. Bryan for City of Wilmington.*
*Ricaud & Empie for defendant Woolvin.*

APPEAL OF CITY OF WILMINGTON.

WALKER, J., after stating the case. We need not consider the numerous exceptions taken in this case, amounting in all to eighty-six. It is sufficient for us to say that there was error in setting aside the answers to the second and fourth issues and giving judgment against the city upon the others. The negligence of Woolvin necessarily preceded that of the city, if there was any negligence at all, for the city is charged with negligence, not because it carelessly piled the brick in the street, but because Woolvin having so negligently piled them, it permitted them to remain so negligently piled in the street and thereby to become dangerous to the public. The negligence of the city, upon the admitted facts, is directly and necessarily dependent upon the negligence of Woolvin and cannot exist without it. If Woolvin was not negligent, then the city is free from blame, for it is not alleged, nor is it suggested, that the intestate would have been killed or injured in any way if the bricks had been properly stacked and secured. Even though the bricks were piled in the street, his position with respect to them would have been a safe one but for the negligence of Woolvin. The verdict of the jury was, therefore, inconsistent. They could not, in law, discharge Woolvin and charge the other defendant. But it does not follow that because Woolvin is guilty the city is also, because in order to charge the city with negligence the jury must find not only that the bricks were negligently piled by Woolvin, but that the city, with actual or constructive knowledge of their dangerous condition, permitted them to remain so.

It is true, as contended by counsel for the plaintiff, that the defendants are liable jointly and severally to her, if there was negligence by both of them which proximately caused her husband's death, and she might have sued them jointly or separately. If she had sued the city alone, a question might have arisen as to whether it would be proper to make Woolvin a party, at the request of the city and against the plaintiff's consent, even if thereby the entire controversy could be settled in one action. But she sued both defendants, and served Woolvin, as well as the city, with process and required them to come in and answer her complaint. She has also declared against both

of them in her complaint, or at least her allegations are suffi-
cient in form and substance to entitle her to judgment against
both defendants.

The judge's refusal of the plaintiff's motion that she be per-
mitted to enter a nonsuit as to Woolvin is not before us for
review, even if it was not right under the circumstances of the
case. We must, therefore, decide upon the ruling of the court
below with all the parties before the court.

As between the defendants, Woolvin's liability is primary,
and that of the city is secondary, not that Woolvin must be
placed in front of the city with respect to the plaintiff's right
to recover for the alleged wrong, but if the plaintiff recovers
against the city, then the latter is entitled to judgment against
Woolvin for the amount of the plaintiff's recovery, because it
was his wrong in negligently piling the brick that originated the
plaintiff's cause of action against the city, and without which
there would have been none, and it is but just and right that he
should answer over to the city and indemnify and save it harm-
less. It is a well-established rule of law that there can be no
contribution or indemnity among mere tort-feasors. But the
principle does not apply to a person seeking indemnity who did
not join in the unlawful act, although he may thereby be ex-
posed to liability, or to one who did not know and was not pre-
sumed to know that his act was unlawful. It must appear that
the parties are *in pari delicto* as to each other before the plain-
tiff's recovery will be barred. 22 Cyc., 99. *Judge Cooley* thus
states the rule: "As under the rules already laid down, the
party wronged may, at his election, compel any one of the
parties chargeable with the act, or any number less than the
whole, to compensate him for the injury. It becomes a consider-
ation of the highest importance to the person or persons thus
singled out and compelled to bear the loss, whether the others
who were equally liable may be compelled to contribute to his
relief. On this subject there is a general rule, and there are also
some very important exceptions. The general rule may be found
expressed in the maxim that no man can make his own miscon-
duct the ground for an action in his own favor. If he suffers
because of his own wrongdoing, the law will not relieve him.

The law cannot recognize equities as springing from a wrong in favor of one concerned in committing it. But there are some exceptions to the general rule which rest upon reasons at least as forcible as those which support the rule itself. They are of cases where, although the law holds all the parties liable as wrongdoers to the injured party, yet as between themselves some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete. There are many such cases where the wrongs are unintentional, or where the party, by reason of some relation, is made chargeable with the conduct of others." Cooley on Torts (3d Ed.), p. 254.

The rule has been stated in another striking way: "The general rule which denies indemnity or contribution to joint wrongdoers is elementary. The cases in which recovery over is permitted in favor of one who has been compelled to respond to the party injured are exceptions to the general rule and are based upon principles of equity. Such exceptions obtain in two classes of cases: (1) Where the party claiming indemnity has not been guilty of any fault except technically or constructively, as where an innocent master is held to respond for the tort of his servant acting within the scope · of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury. Very familiar illustrations of the second class are found in cases of recovery against municipalities for obstructions to the highways caused by private persons. The fault of the latter is the creation of the nuisance, that of the former the failure to remove it in the exercise of its duty to care for the safe condition of the public streets; the first was a positive tort and the efficient cause of the injury complained of, the latter the negative tort of neglect to act upon notice, express or implied. Of the latter class are the cases cited by counsel for the respondents: *Village of Port Jervis v. First Nationl Bank* (96 N. Y., 550); *Village of Seneca Falls v. Zalinski* (8 Hun., 575); *City of Rochester v. Montgomery* (72 N. Y., 65); *Lowell v. Boston and Lowell Railroad Corporation*

(23 Pick., 24)"; *Geneva v. Brush Electric Co.,* 50 Hun. (57 N. Y. Supreme Ct. Rep.), 584; (S. C. 3 N. Y. Supp., 595).

An apt illustration of the rule and its application to a concrete case, much like ours, will be found in *Washington Gas Co. v. District of Columbia,* 161 U. S., 316. The company was permitted to use the streets and sidewalks of Washington for the purpose of connecting its mains with abutting dwellings, by laying supply or service pipes with gas boxes and other apparatus. The District, as successor to the city of Washington, in a suit against it of a person injured by falling in a gas box negligently left in the sidewalk, open and unguarded, by the gas company in doing the work, was adjudged to pay damages to the plaintiff and sued the gas company for its indemnification. The court considered two questions, as being presented in the case: First. Did the legal duty rest primarily on the gas company to repair and keep the gas box in order? Second. Had the District a cause of action against the gas company, resulting from the fact that it had been condemned to pay damages occasioned by the defective gas box, which it was the duty of the gas company to supervise and repair? The court stated that an affirmative answer to these propositions was rendered necessary by both principle and authority, and it based its decision upon the following three important and leading cases, among numerous others, and thus referred to them: "This court said in *Chicago v. Robbins,* 2 Black., 418, 422: 'It is well settled that a municipal corporation having the exclusive care and control of the streets is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrongdoer.' And the same doctrine is reiterated in almost the indentical language in *Robbins v. Chicago,* 4 Wall., 657, 670. The principle thus announced qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers. In the leading case of *Lowell v. Boston and Lowell R. R.,* 23 Pick., 24, 32, the doctrine

was thus stated: 'Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offense. The rule is, *in pari delicto potior est conditio defendentis.* If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offense. In respect to offenses, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers.' In *Brooklyn v. Brooklyn City R. R.,* 47 N. Y., 475, 487, the same rule was applied, the court saying: 'Where the parties are not equally criminal, the principal delinquent may be held responsible to a co-delinquent for damage paid by reason of the offense in which both were concerned in different degrees as perpetrators.' All the cases referred to·involved only the right of a municipal corporation to recover over the amount of the damages for which it had been held liable in consequence of a defective street, occasioned by the neglect or failure of another to perform his legal duty. The rule, however, is not predicated on the peculiar or exceptional rights of municipal corporations. It is general in its nature." In the course of the opinion in the *Gas Company case* the court says that the authorities in support of the rule of law in regard to the right of indemnity in such cases are entirely too numerous for citation.

But it has been squarely held that a person who negligently places an obstruction in a highway, or leaves it ·in a defective or dangerous condition, so as to render its use by the public hazardous, cannot resist the claim of a municipality to indemnity for damages paid to a party injured by it, on the ground that the neglect or failure of the municipal authorities to remove the obstruction contributed in some degree to the injury. *Water-bury v. Traction Co.,* 74 Conn., 152. The language of the court applies so closely to the facts of this case, as they now appear, that we cannot do better than quote it here: "The pri-

mary cause of the accident was the act and fault of the defendant in taking down the railing and failing to restore it, assuming that the defendant took it down as alleged. As between the plaintiff and defendant there was no co-operation in the act of negligence which caused the injury. The plaintiff did not permit the defendant to leave the railing down. If the defendant took it down it promised impliedly, if not expressly, to do so in a way not to endanger public travel, and to put it up again. If it failed to keep that promise it cannot justly charge the plaintiff with negligence, either in having relied upon such promise or in having failed to compel its performance. If the defendant removed the railing and left it down, as alleged, the fact that the plaintiff had knowledge of the defect and neglected to repair it, although it had a fair opportunity to do so, will not prevent a recovery in this action," citing *Hamden v. New Haven & N. Co.,* 27 Conn., 158, 167; *Norwich v. Breed,* 30, *id.,* 535, 545; *Holyoke v. Hadley Co.,* 174 Mass., 424; *Brookville Borough v. Arthurs,* 152 Pa. St., 334; *Chicago City v. Robbins,* 2 Black., 418, 425. See also *Waburn v. R. R.,* 109 Mass., 283; *Manchester v. Quimby,* 60 N. H., 10; *Wickwire v. Town of Angola,* 4 Ind. App., 253.

The case of *Manchester v. Quimby,* just cited, is exactly like this case in its facts. Quimby had been permitted by the city to pile boards upon a street in front of his house while making repairs on it. This was negligently done, and the city was compelled to pay damages to a person injured thereby. The court held that he took the license with the implied promise to do the work carefully and was liable over to the plaintiff for any damage it had been forced to pay in consequence of his negligence; and to the same general effect is the other case, *Wickwire v. Angola, supra. Brooklyn v. R. R.,* 47 N. Y., 475.

A very instructive case, and one much in point in the clear statement of the principles distinguishing and classifying the cases, and assigning ours to that class where there is, in law, primary and secondary liability and a right to indemnity, is *Union Stock Yards Co. v. R. R.,* 196 U. S., 217, in which *Justice Day,* for the court, says: "Coming to the very question to be determined here, the general principle of law is well settled that

one of several wrongdoers cannot recover against another wrong-
doer, although he may have been compelled to pay all the dam-
ages for the wrong done. In many instances, however, cases
have been taken out of this general rule, and it has been held
inoperative in order that the ultimate loss may be visited upon
the principal wrongdoer, who is made to respond for all the
damages, where one less culpable, although legally liable to
third persons, may escape the payment of damages assessed
against him by putting the ultimate loss upon the one princi-
pally responsible for the injury done. These cases have, per-
haps, their principal illustration in that class wherein munici-
palities have been held responsible for injuries to persons law-
fully using the streets in a city, because of defects in the streets
or sidewalks caused by the negligence or active fault of a prop-
erty owner. In such cases, where the municipality has been
called upon to respond because of its legal duty to keep public
highways open and free from nuisances, a recovery over has
been permitted for indemnity against the property owner, the
principal wrongdoer, whose negligence was the real cause of the
injury."

And again: "This is not like the case of the one who creates
a nuisance in the public streets; or who furnishes a defective
dock; or the case of the gas company, where it created the con-
dition of unsafety by its wrongful act; or the case of the defect-
ive boiler, which blew out because it would not stand the pres-
sure warranted by the manufacturer. In all these cases, the
wrongful act of the one held finally liable created the unsafe or
dangerous condition from which injury resulted. The principal
and moving cause, resulting in the injury sustained, was the act
of the first wrongdoer, and the other has been held liable to
third persons for failing to discover or correct the defect caused
by the positive act of the other."

This Court has approved the rule thus settled by the authori-
ties. *Brown v. Louisburg,* 126 N. C., 701; *Raleigh v. R. R.,*
129 N. C., 265; and those cases cannot in any way be distin-
guished from the one now under consideration. If the city had
been sued alone and condemned to pay damages to the plaintiff

it could, by a separate action, have recovered the full amount of Woolvin, not merely a proportionate part, as it is not a question of contribution, but of indemnity. The conclusiveness of the judgment against the city upon Woolvin in the action against him for indemnity would depend upon the notice given to him of the pendency of the former suit and his opportunity to defend the same. *Jones v. Balsley,* 154 N. C., 61; *Prescott v. Leconte,* 82 N. Y. Supp., 411 (83 App. Div., N. Y., 482, and cases cited at page 487); *Chicago v. Robbins,* 67 U. S. (2 Black.), 418; *Robbins v. Chicago,* 71 U. S. (4 Wallace), 657; *Gas Co. v. Dist. of Col., supra.* The other cases cited sustain the rule as to notice laid down in the case of *Jones v. Balsley, supra.* Where the real delinquent is a party to the original action against the person entitled to indemnity, judgment over against him will be given without the necessity of a separate suit, and it has been so expressly decided. *Fort Worth v. Allen,* 10 Tex. Civ. App., 488.

We think that the contiued presence of Woolvin as a party is essential to determine finally the rights of all the parties involved in the entire controversy. The Code contemplates this method of trial in order to avoid circuity and multiplicity of actions. "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may determine the ultimate rights of the parties on each side as between themselves." Clark's Code (3d Ed.), sec. 424. It has been held under this section that a judgment can be rendered in favor of a defendant against his codefendant upon matters connected with the same cause of action, and that while the rule is that a judgment against several defendants, nothing else appearing, determines none of their rights among themselves, but only the existence and legality of the plaintiff's demand, yet where the respective rights of the defendants, as between themselves, are put in issue by the pleadings, they may be adjudicated, and the judgment is binding and conclusive upon them. *Baugert v. Blades,* 117 N. C., 221; Clark's Code, *supra,* and notes, where the cases are collected.

In *Baugert v. Blades,* the Court said: "It is quite apparent from the pleadings that an intelligent trial required that the

rights of the defendants, as well as the plaintiffs, should be fully determined and settled, as appears from the judgment was done."

All this being so, and the liability of the city being dependent upon the prior negligence of Woolvin, who was the author of the alleged wrong and the principal delinquent, if there was any negligence, the case is brought directly within the following rule stated in *Jarrett v. Trunk Co.,* 144 N. C., 299 : "We will, however, caution the judges of the superior courts in respect to such practice, and invite their attention to what is said in *Benton v. Collins,* 125 N. C., at page 91: 'Before such partial new trial, however, is granted, it should clearly appear that the matter involved is entirely distinct and separable from the matter involved in the other issues, and that the new trial can be had without danger of complication with other matters;' and we will add that before such partial new trial is ordered it should clearly appear that no possible injustice can be done to either party." While the power to set aside the answer to a particular issue may exist under certain circumstances, it should not be exercised except in a clear case. *Burton v. R. R..* 84 N. C., 192; *Jones v. Insurance Co.,* 153 N. C., 388. And we now add to what is said in those cases, that where the questions involved are so interwoven that they cannot be separated and a new trial allowed as to one or more issues, without prejudicing the rights of one or more of the parties or preventing a full and just trial of the whole matter, the power to grant a partial new trial should not be exercised. That is our case, and we think that the judge should have set aside the entire verdict, as it was the only course to adopt that would conduce to a fair trial and give to each of the parties an equal chance to be heard, without being fettered or hampered by a restricted trial. It will not prejudice the plaintiff, for if there was actionable negligence on the part of Woolvin, or if both defendants were guilty of such negligence, the plaintiff will recover against one or both, according to his right in law, but one or both of the defendants may suffer great detriment and wrong by the opposite course. In directing the whole verdict to be set aside, we are not reviewing the exercise of the judge's discretion, but deciding, as mat-

ter of law that having set aside a part, he should have gone further and set aside the entire verdict.

We think, though, that the issues should be amended by submitting one as to the primary and secondary liability of Woolvin and the city, as between themselves. If separate issues as to the negligence of Woolvin and the city are submitted, affirmative answers to them will not determine their liability as between themselves, or of Woolvin to the city, but the jury, by their verdict, must find as to this liability, otherwise the court cannot proceed intelligently in rendering judgment, as between the defendants. There would be no finding upon which to base such a judgment. We are of the opinion, as the case is now presented to us, that there is a primary and secondary liability, as between Woolvin and the city; in other words, if Woolvin piled the brick negligently, and this proximately caused the death of plaintiff, his liability is primary and that of the city secondary, as between them, provided the city has been negligent at all, but we cannot foretell how the facts will appear at the next trial.

It was said on the argument that the plaintiff has released the defendant Woolvin from all liability. If so, the city may set up the release in its answer, as a bar to the plaintiff's recovery, if so advised, and have an issue as to the release submitted to the jury. We will not now express an opinion as to the effect of the instrument said to be a release, if one has been given, for that may depend upon its terms, and the facts in regard to it are not before us. We will not thus venture in the dark, but rather wait until the light is turned on, that we may the better see and understand.

It is not necessary to examine the other exceptions. There was error in the ruling of the judge in the particular indicated. The verdict, as to the city, will be set aside and a new trial granted as to all the issues.

New trial.

### WOOLVIN'S APPEAL.

WALKER, J. The defendant Woolvin demurred to the city's answer upon the following grounds:

1. That the city denies that he was negligent, and yet asks judgment against him because he was.

The city, in its answer, does allege that Woolvin was not negligent and then avers that, if he was, his liability is primary and that, if it is made to pay damages, judgment should be given for it, so that it may be indemnified and reimbursed for what it will have to pay on account of Woolvin's negligence in piling the bricks. It was proper to plead in this way. If Woolvin was not negligent, or rather, if the intestate's death was not caused by his negligence in piling the brick, the city would not be liable, and the other branch of the pleading is predicated upon a possible adverse finding upon that issue, in which case the city asserts its right to recover against Woolvin. There is nothing even inconsistent in the two allegations.

2. That it must be determined that the city is liable before it can be adjudged that Woolvin is liable to indemnify the city and subjected to a judgment in its favor for his wrong to the plaintiff.

This is true, but the two questions can be settled, as we have said in the city's appeal in this action, and the judge will instruct the jury, upon the issues, as to the liability of the respective parties, the defendants, one or both of them, to the plaintiff, and of Woolvin to the city.

The court properly overruled the demurrer of Woolvin to the answer of the city. We do not think that *Dillon v. Raleigh,* 124 N. C., 184, is an authority in support of the demurrer. The point was not presented by proper exception and appeal in that case, and the court did not profess to pass upon it. The authorities cited by us in the opinion delivered in the appeal of the city amply sustain the order of the court overruling the demurrer, and it is not necessary to repeat them here.

The other exceptions of the defendant Woolvin are not tenable, in the present state of the case, and require no special or separate discussion at this time. We give no opinion in regard to them. This appellant's brief indicates that he is content with the decision in the city's appeal, by which we granted a new trial of all the issues, but whether so or not, there was no error committed by the court in this appeal.

No error.