ROBERT GADSDEN v. GEORGE H. CRAFTS & CO., ATLANTIC COAST LINE RAILROAD COMPANY, AND SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 10 April, 1918.)

**1. Pleadings—Amendments—Cause of Action.**

Where negligence is alleged in an action for damages against a railroad company and its contractor for injury to plaintiff while engaged in building a bridge, that the place provided for the employee to work was insecure by reason of a scantling used in the construction of the bridge, where plaintiff was at work, having been nearly sawed in two, and therefore weak, it is within the discretion of the trial judge to permit an amendment, in conformity with defendants' evidence, that the weakness of the plank was caused by a knot-hole therein, such amendment not constituting a new cause of action.

**2. Same—Limitation of Actions.**

Where such an amendment to the complaint is properly allowed by the trial judge, in his discretion, it relates back to the commencement of the action, and prevents the bar of the statute of limitations if the action was originally brought in time.

**3. Principal and Agent—Negligence—Liability to Third Persons—Relative Liability—Judgment Against Agent.**

Both the principal and agent are jointly and severally liable to an employee of the latter for injuries caused by the latter's negligence, the liability of the former being secondary; and where the agent has been sued alone, the principal is not required to defend the action upon notice, or otherwise, and is not bound by the judgment obtained; especially is this true when the agent has expressly indemnified his principal against such loss. The relative rights of and remedies against joint tort feasors, discussed and applied by WALKER, J.

**4. Same—Nonsuit as to Principal—Appeal and Error—Reversal—Trials—Railroads—Contractors.**

Where a railroad company and its contractor are sued for damages alleged to have been negligently caused by the latter to its employee in constructing a bridge for the former, and during the trial the plaintiff takes a nonsuit and appeals upon the intimation of the court that he could not recover against the railroad company, but prosecutes his action to judgment against the contractor; and upon reversal on appeal to the Supreme Court the trial is proceeded with against the railroad company in the Superior Court; *Held*, the amount of the judgment formerly rendered against the contractor is not conclusive upon the railroad company as to the damages, and an instruction by the court that it is constitutes reversible error.

CIVIL ACTION, tried before *Devin, J.,* and a jury at December Term, 1917, of NEW HANOVER.

The plaintiff sued the three defendants, Crafts & Co., Atlantic Coast Line Railroad Company, and Seaboard Air Line Railroad Company, alleging that he was injured by the negligence of Crafts & Co., by whom he was employed as a servant in building a bridge over the tracks of the two railroad companies on Fourth Street in the City of Wilmington, the said Crafts & Co. being the servant or employee of the railroad companies in building the bridge.

Crafts & Co. did not appear or plead, and judgment by default was taken against them. The railroad companies answered separately, alleging, among other things, that Crafts & Co. were not their servants, but independent contractors, and that they were not liable to the plaintiff for their negligence.

The case was before us at a former term (173 N. C., 418). It appears from the record that, at the first trial of the case in the Superior Court, the presiding judge, at the close of the testimony, held, or intimated, that he would hold, that Crafts & Co. were independent contractors, and consequently that the railroad companies were not liable to plaintiff for their negilgence in injuring him. When this was done, plaintiff, instead of trying the case out, submitted to a nonsuit, and judgment was accordingly entered as to the railroad companies, and plaintiff appealed to this

Court. We reversed the judgment of nonsuit and ordered a new trial (173 N. C., 418).

When the plaintiff submitted to a nonsuit in the court below at December Term, 1916, the trial proceeded against Crafts & Co. for the assessment of damages under the judgment by default and inquiry against them, for want of appearance or answer, which had been entered at October Term, 1915, and the jury assessed the damages against Crafts & Co. at $1,250, for which judgment was entered against them. The railroad companies took no part in the trial of the case, as to the assessment of damages against Crafts & Co., after the judgment of nonsuit against the plaintiffs was entered, but examined and cross-examined witnesses so long as they remained in the case, and before the court had decided that they were not liable to the plaintiff.

When the opinion of this Court was remitted to the court below, a trial as to the railroad companies was had, and resulted in a verdict for the plaintiff, assessing his damages at $1,250. At the trial the plaintiff offered in evidence the record of the judgment against Crafts & Co. for $1,250. The court admitted it and held that it was conclusive on the defendants as to the amount of damages. Defendants (railroad companies) excepted. The court charged upon the third issue, relating to damages, as follows: "Now, on the former trial, that portion of this case, the amount of damages, or the amount of money sufficient to compensate the plaintiff for the injury sustained upon this occasion, having been ascertained and fixed by a verdict and judgment, the court charges you that would be binding. So the amount arrived at there, to wit, $1,250, has been determined, so far as this case is concerned, and that amount stands as an equivalent for the injury which he sustained upon this occasion and under circumstances which he makes the basis of his action. So that amount has been now found to be $1,250, in money, which is to compensate him once and for all for the injury occasioned to him under the circumstances of this case, and if you have answered the first issue 'Yes,' and the second issue 'No,' your answer to the third issue would be $1,250." Defendants (railroad companies) excepted. There were other exceptions, which are noticed in the opinion of the Court. Judgment was entered upon the verdict, and defendants (railroad companies) appealed.

*E. K. Bryan and A. G. Ricaud for plaintiff.*
*John D. Bellamy & Son for defendant Seaboard Air Line Railway Co.*
*Rountree & Davis for defendant Atlantic Coast Line Railroad Co.*

WALKER, J., after stating the case: The plaintiff alleged that his injury was caused by a defect in one of the scantlings used in constructing

GADSDEN v. CRAFTS.

the bridge, it having been sawed nearly in two, so as to weaken it and diminish its support of the trough in which he was mixing material and the platform upon which he stood to perform his work. The defendants' evidence tended to show that the weakness of the scantling was caused by a knot in it. Thereupon plaintiff requested that he be allowed to amend his complaint by alleging this fact as an additional act of negligence. The Court permitted the complaint to be amended, as indicated, and, we think, properly so. The cause of action was the negligence in having a weak plank which was insufficient to support the heavy material placed upon it. The amendment was not the statement of a new cause of action, so as to be barred by the statute of limitations, which the defendants proposed to plead, but merely a more accurate statement of that originally pleaded.

We said in *Simpson v. Lumber Co.,* 133 N. C., 95: "It can make no difference with respect to the plaintiff's right to recover whether the burning was caused by a defective engine or by setting on fire combustible material carelessly left by the defendant on the right of way. Amendments which only amplify or enlarge the statement in the original complaint are not deemed to introduce a new cause of action, and the original statement of the cause of action may be narrowed, enlarged, or fortified, in varying forms, to meet the different aspects in which the pleader may anticipate its disclosure by the evidence. 1 Enc. Pl. and Pr., 557-562. In suits founded on negligence, allegations of fact tending to establish the same general acts of negligence may properly be added by amendment. 1 Enc. Pl. and Pr., 563; *R. R. v. Kitchin,* 83 Ga., 83. An amendment can be allowed under our law when it does not substantially change the claim or defense (Code, sec. 273), and the statement of the additional grounds of negligence is not a new cause of action or a substantial change of the plaintiff's claim," citing numerous cases, and among them *Smith v. Bogenschutz,* 19 S. W. (Ky.), 667, where it was held that a complaint which alleged that a certain injury caused by the overflow of molten iron from a ladle in which it was being carried was due to the jostling of the carriers in a narrow passway, could be amended so as to allege that the overflow was due to a defect in the ladle, without introducing any different cause of action. See, also, *Steeley v. Lumber Co.,* 165 N. C., 27; *Deligny v. Furniture Co.,* 170 N. C., 189; *Johnson v. Telegraph Co.,* 171 N. C., 130. Such an amendment relates back to the commencement of the action. *Lefler v. Lane,* 170 N. C., 181, and, therefore, prevents the bar of the statute, if the action was originally brought in time. This exception is overruled.

The real question involved is whether the railroad companies are conclusively bound as to damages by the judgment against Crafts & Co. We are of the opinion that they are not. "Absolute identity of interest is

essential to privity. The fact that two parties as litigants in two different suits happen to be interested in proving or disproving the same facts creates no privity between them." 24 A. & E. Enc. of Law (2 Ed.), 747.

"The application of the principle of *res judicata* to persons standing in the relation of principal and agent or master and servant has, by some authorities, been supported on the ground that privity exists between persons standing in these relations. But other authorities deny the existence of such privity, and hold that in such cases the technical rule is, upon grounds of public policy, expanded so as to embrace within the estoppel of a judgment persons who are not, strictly speaking, either parties or privies." *Ibid.,* 752.

In all the cases cited by the learned counsel of the plaintiff, the first judgment was taken against a party who was either expressly or impliedly entitled to be indemnified by the party against whom the second suit is brought, and who had notice of the first suit and a fair opportunity to defend the same with the right of appeal. This was so in *Lovejoy v. Murray,* 3 Wall., 1, at p. 19, upon which he mainly relies, and very much so, because there the plaintiff had paid a judgment for damages recovered for his committing a trespass which the defendants had expressly directed him to commit, and had indemnified him against any loss resulting from it; and, further, the sheriff, who had committed the trespass, and was indemnified against loss, with a just appreciation of their relations in the transaction, called upon Lovejoy and others, defendants below, when he was sued for the trespass, to come in and defend the action in his behalf, and they did so. It was held that the effect of giving the bond was to make Lovejoy and his codefendants principals in the trespass, and that so far as the action of the sheriff after that was a wrong it was directed by them and was for their benefit, and they were defending their own acts, although the suit was in the sheriff's name.

For this position, *Justice Miller,* who wrote the opinion for the Court, quoted from 1 Greenleaf on Evidence, sec. 522-523: "Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question and between the same parties should be closed forever. It is also a most obvious principle of justice that no man ought to be bound by proceedings to which he is a stranger; but the converse of this rule is equally true, that by a proceeding to which he was not a stranger, he may well be bound. Under the term 'parties,' in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defense or to control the proceedings, and to appeal from the judgment. This right involves, also, the right to adduce tes-

timony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are strangers to the cause. But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties and claim under them, or in privity with them, are equally concluded by the same proceedings."

This is the underlying principle of all the cases upon which the plaintiff bases his contention that the ruling of the judge was correct. But it does not apply to a case of this kind, for here the railroad companies would not be liable to Crafts & Co., if they had paid the judgment against them. They were not directed by the railroad companies to commit the tort, but, on the contrary, Crafts & Co. expressly indemnified them against loss caused by their negligence in performing the work under the contract, and besides, if there had been no such express indemnity, Crafts & Co. would be liable over to the railroad companies for such loss. They are also liable for injury to the property.

"There can be no doubt as to the proposition that a servant is liable to his master for any damage occasioned by the servant's negligence or misconduct, for which the master is liable to another. As between the master and a stranger, the servant represents the master, and the master is answerable for the servant's acts under the doctrine of *respondeat superior*. But this maxim does not apply as between master and servant, whose liability is based upon his contract. He is bound to indemnify the master for damages resulting from his failure to perform the duty which he owes to the master in every case. Even in those jurisdictions where the courts still adhere to the doctrine that a servant is not responsible to third persons for mere nofeasance, the courts do not hold that the servant would not be liable to his master therefor. Every servant is bound to take due care of his master's property entrusted to him. If guilty of gross negligence, whereby it is injured, he is liable to an action. So, too, if guilty of fraud or misfeasance, whereby damage has accrued to his master. Although it is a general rule that a pilot is not an insurer, he is bound to use due diligence and reasonable care and skill, and is liable to his employer for the damages which the latter's vessel sustains, or which he is compelled to pay on account of injuries to another's vessel in consequence of the failure to exercise such care and skill." 7 Labatt on Master and Servant (2 Ed.), 8011, 8012, 8013.

It was held in *Grand Trunk R. R. Co. v. Latham,* 63 Me., 177, that "a servant is liable to his master for what the master has had to pay on account of the servant's negligence." To the same effect are the following cases: *Mobile, etc., R. R. Co. v. Clanton,* 59 Ala., 392; *Costa v. Yochim,* 104 La., 170; *Gilson v. Collins,* 66 Ill., 136, citing Story on Agency, sec. 217 (c); *Dean v. Angus,* Bec., 378 (Fed. Cases, No. 3703),

and *Purviance v. Angus,* 1 Dall (U. S.), 180, 184, where, speaking of the agency of the master of a vessel, it is said: "It is insisted upon that a master of a ship is one who, for his knowledge in navigation, fidelity and discretion, hath the government of the ship committed to his care and management; that he must give an account for the whole charge, and, upon failure, render satisfaction. And, therefore, if misfortunes happen, if they are either through the negligence, willfulness, or ignorance of himself or mariners, he must be responsible; and his owners may sue him for reparation of damages jointly or separately, both according to the common law and marine law. . . . And it must appear very strange to any understanding that the owners of a vessel should be answerable in damages for the misconduct of the master, merely because they appointed him master, and that the master, the actual malefeasor, should not be accountable over to them—that the innocent should suffer, and the guilty person go scot free."

And because of this liability of the servant to the master, and his primary liability to the person injured, Labatt again says, Vol. 7, p. 8014: "A servant who requests his master to defend a suit for injuries occasioned by the former's misconduct has been held liable for the costs and counsel fees therein, as well as for the amount recovered as damages. And it has been declared that a judgment against the master in favor of a third person, for damages caused by a servant's negligence, is correctly taken as the basis for the judgment in the case against the servant, unless error is shown."

The same view of liability of the servant to the master, and of the primary liability of the servant and the secondary liability of the master, was adopted by this Court in *Smith v. R. R.,* 151 N. C., 479, where it was held that a release to the servant would inure to the master and completely exonerate him, as the servant was responsible to him in damages for the tort, if the master is injured or is subjected to loss.

The doctrine is made clear in 24 A. & E. Enc. of Law (2 Ed.), where it is said, at pp. 740-741: "Where a person is responsible over to another, either by operation of law or by express contract for whatever may be justly recovered in a suit against each other, and he is duly notified of the pendency of the suit and requested to take upon himself the defense of it, and is given an opportunity to do so, the judgment therein, if obtained without fraud or collusion, will be conclusive in a subsequent suit against him for the indemnity, whether he appeared in the former suit or not. In such case the person responsible over is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means of controverting the claim as if he were the real and nominal party upon the record, and it would be unreasonable to permit him to contest the justice of the claim in the suit

against himself, after having neglected or failed to show its injustice, in the suit against the person he was bound to indemnify. But to make this doctrine applicable, the person first sued must have a right of action over against another for indemnity in case of loss. Therefore, if the indemnitor be sued first by one who has a right of action against both the indemnitor and the indemnitee, the judgment in such action will not conclude the indemnitee in a subsequent action against him by the same plaintiff."

Speaking of the relation of principal and agent, or master and servant, and with special reference to the question we are now discussing, the Court said, by *Justice Hydrick,* in *Roockhardt v. R. R.,* 84 S. C., 390; 27 L. R. A. (U. S.), at p. 436: "While both are liable, and while they may be sued jointly or severally, still there is no such privity between them as makes their interests in actions arising out of the torts of the agent identical. In the first place, the agent is primarily liable for its own torts, and it is liable over to the principal. 'The fact that two parties, as litigants in two different suits, happen to be interested in proving or disproving the same facts, creates no privity between them.' 24 A. & E. Enc. of Law (2 Ed.), 747. A judgment on the merits in favor of the agent is a bar to an action against the principal for the same cause, because the principal's liability is predicated upon that of the agent. But a judgment against the agent is not conclusive in an action against the principal. A judgment against the principal would not conclude the agent, unless the agent had been vouched or given notice and an opportunity to defend," citing numerous authorities.

The doctrine as to the legal effect of a judgment as to one who is not a party to it, but is liable over to the defendant by reason of the relation between them, if he had notice of the suit in which the judgment was rendered, is discussed in *Jones v. Balsley,* 154 N. C., 61, and also in *Gregg v. City of Wilmington,* 155 N. C., 18, which was an action for a tort, where it is said: "The principal and moving cause resulting in the injury sustained was the act of the first wrongdoer, and the other has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the principal," citing *Union Stock Yards v. R. R.,* 196 U. S., 217. See, also, *Brown v. Louisburg,* 126 N. C., 701; *Raleigh v. R. R.,* 129 N. C., 265. The cases of *Chicago v. Robbins,* 67 U. S. (2 Black), 418, and *Robbins v. Chicago,* 71 U. S. (4 Wallace), 657, and *Washington Gas Co. v. District of Columbia,* 161 U. S., 316, are of the same nature.

But in this case, as we have seen, the railroad companies are not under any duty to indemnify Crafts & Co., but the latter, both expressly and impliedly, are under an obligation to protect and save harmless the railroad companies, though they may both be liable to the plaintiff, and

could be sued jointly or severally for the tort. .The rule in this respect, as stated in the cases being as follows:

1. That persons engaged in committing the same trespass are joint and several trespassers, and not joint trespassers exclusively. Like persons liable on a joint and several contract, they may be all sued in one action; or one may be sued alone, and cannot plead the nonjoinder of the others, in abatement; and so far is the doctrine of several liability carried that the defendants, where more than one are sued in the same action, may sever in their pleas, and the jury may find several verdicts, and on several verdicts of guilty may assess different sums as damages.

2. That no matter how many judgments may be obtained for the same trespass, or what the varying amounts of those judgments, the acceptance of satisfaction of any one of them by the plaintiff is a satisfaction of all the others, except the costs, and. is a bar to any other action for the same cause. *Lovejoy v. Murray,* 70 U. S. (3 Wall.), 1 and 19; *Howard v. Plumbing Co.,* 154 N. C., 224; *Gregg v. City of Wilmington, supra.*

This is so, because as to a third person the tort is joint or several, and he may sue all or any one or more of them, but can have only one satisfaction. As between the tort feasors, while there is no contribution, the ultimate liability will be upon him who committed the wrong originally, if the other is made to pay for it by the injured party, but a judgment against the wrongdoers so liable to the plaintiff and ultimately to the other tort feasor, will not be conclusive against the latter, as he is under no legal obligation to defend the suit against the party, who has also wronged him, as he is under no obligation to indemnify him.

A case which seems to be precisely applicable is *Schaefer v. City of Fond du Lac,* 99 Wisconsin, 333-334, where it was held as follows: "The doctrine that where a person against whom suit is brought to recover damages is entitled to indemnity from another in case of being compelled to pay such damages, such other is bound by the judgment against such person if he be notified of the pendency of the suit and has an opportunity to defend against the same, does not apply to the facts of this case. The judgment against the indemnitee in such a case is binding on the indemnitor, but if the latter be first sued the judgment in a subsequent suit by the same plaintiff against the indemnitee will not effect the plaintiff as to any question litigated in such first suit."

Remembering that Crafts & Co. are the indemnitors, as between them and these defendants, the analogy between the two cases is perfect, for the principle of that case, when applied to the case at bar, produces this legal result, that a judgment for a third person (here the plaintiff) against the indemnitor (Crafts & Co.) will not affect the parties to a

second suit by the same plaintiff against the indemnitee (railroad companies).

In *Schaefer v. Fond du Lac, supra,* the Court, after referring to the doctrine as we have stated it, and commenting on *Robbins v. Chicago* (4 Wall.), 657, and other cases of the same class, thus sums up the matter: "It is clear that to make the doctrine under discussion apply, the person first sued must have a right of action over against another for indemnity in case of loss. The conclusive character of the first judgment is only where the person first sued himself becomes the plaintiff against the indemnitor, to recover over for the loss sustained by being compelled to pay in the first case. Here we are asked to apply it, not in favor of the indemnitee who has paid the loss against the indemnitor, but against the indemnitee. No precedent for that, we may safely venture to say, can be found in the books. Certainly none was cited by the counsel."

In this record it appears that the plaintiff after the railroad companies had been dismissed from the case by the nonsuit, proceeded to have executed the inquiry as to damages, after taking a default judgment against Crafts & Co. When the inquiry was being executed and the judgment was entered, the defendants were not parties. It is true they examined witnesses up to the time of their departure from the court, at the invitation of the plaintiff, who submitted to the nonsuit, but they had been defendants charged with negligence and threatened by the plaintiff with a verdict for damages because of their separate liability as tort feasors, and they could do nothing else, in their own defense, but examine witnesses, until the court had determined upon *their* liability. After this was done, they ceased to be parties and participated no longer in the trial of the case, and were not present when the judgment was entered, and could not appeal therefrom, as they were not appearing for Crafts & Co., but solely for themselves; had not been requested by them to assume the defense of the suit against them, and were not depending upon any ground which imposed upon them the duty of defending Crafts & Co., but were defending for a very different and contrary reason. Crafts & Co. had not only failed to ask for their assistance, but had no right to do so, and themselves defaulted and abandoned the case entirely to the control of the plaintiff. Under such circumstances and as they were not liable to indemnify Crafts & Co., and had obtained a judgment in their favor, how could they appeal from the judgment for damages?

The case of *Lovejoy v. Murray, supra,* decided that they must be called in to defend, or notified of the suit, and have a fair opportunity to examine and cross-examine witnesses, with the right of appeal. They could not be vouched to defend, unless under a duty to do so by reason of being indemnitors to Crafts & Co., which they are not. The case

stands just as if they had been sued separately as tort feasors, and the rule applies that "there can be no contribution between joint trespassors," and one is not bound by a judgment against the other, where that simple relation exists. It would be quite different if the judgment had been first taken against the railroad companies and they had notified Crafts. & Co. to come in and defend for them, the former being liable for their indemnity in case of a loss. The judgment then would have been binding on Crafts & Co. by reason of this fact, but as Crafts & Co. were liable for the indemnity of the railroad companies, and the latter, therefore, not liable for the indemnity of Crafts & Co., the judgment against the latter cannot affect the defendants.

The court erred in its charge as to the legal effect of the judgment. There is no error in other respects.

New trial as to damages only.

New trial.